**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| COALITION FOR INDEPENDENT TECHNOLOGY RESEARCH,<br><br>  Plaintiff,<br><br>  v.<br><br>MARCO RUBIO, in his official capacity as Secretary of State; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; and PAMELA BONDI, in her official capacity as Attorney General of the United States,<br><br>  Defendants. | Civil Action No. 1:26-cv-00815 (JEB) |

**MOTION FOR PROTECTIVE ORDER BARRING RETALIATION AND**
**RESTRICTING DEFENDANTS' USE OF INFORMATION**
**DISCLOSED IN THE COURSE OF LITIGATION**

Plaintiff Coalition for Independent Technology Research ("CITR") moves for a protective order barring the government from retaliating against CITR or its members for their participation in this lawsuit, and to restrict Defendants' use of identifying or other sensitive information disclosed in the course of this lawsuit. In support of this motion, CITR states the following.

1.     On March 9, 2026, CITR, on behalf of itself and its members, filed this lawsuit challenging Defendants' policy of excluding and deporting noncitizens whose work involves combatting misinformation and disinformation, fact-checking, content moderation, trust and safety, or compliance (the "Censorship Policy" or "Policy"). The Complaint alleges that the Censorship Policy harms CITR's members, and CITR itself, by chilling its members' expressive activities, and that the Policy violates the First and Fifth Amendments and the APA.

2.      While CITR and its members had the fortitude necessary to file this suit, they fear that Defendants will retaliate against them for doing so. These fears take two forms. CITR's *noncitizen* members fear that Defendants will retaliate against them for their participation in this lawsuit by arresting, detaining, or deporting them, denying them reentry into the United States, revoking their visas, revoking or adversely adjusting their lawful status, or denying their pending or future immigration applications—or by carrying out any of these actions against their noncitizen family members. *See* DeCell Decl. ¶ 4 (attached as **Exhibit A**). It is because of this fear that CITR's Complaint identifies noncitizen members affected by the Censorship Policy only pseudonymously. Compl. ¶¶ 69–100, ECF No. 1. And it is also because of this fear that, in its forthcoming preliminary injunction motion, CITR will continue to identify one of its noncitizen members only pseudonymously. Notwithstanding the fact that these noncitizen members are not identified by name in the Complaint (and, with one exception, in the preliminary injunction motion and attached declarations), they fear that Defendants will be able to identify them based on some of the details that were necessary to include in the Complaint and will be necessary to include in the forthcoming motion and declarations. CITR and its *citizen* members separately fear that Defendants will retaliate them, either by taking the actions described above against their noncitizen family members and colleagues, *see* DeCell Decl." ¶¶ 5–6, or by using the regulatory powers of the federal government against them in a pretextual manner.

3.      These fears are well founded. Multiple federal courts have now concluded that government officials (including Defendants) have taken adverse immigration actions against noncitizens in retaliation for their First Amendment–protected activities. *See Am. Ass'n of Univ. Professors v. Rubio*, 802 F. Supp. 3d 120, 184 (D. Mass. 2025) ("Secretaries Noem and Rubio are engaged in a mode of enforcement leading to detaining, deporting, and revoking noncitizens' visas

solely on the basis of political speech, and with the intent of chilling such speech . . . ."); *Ozturk v. Trump*, 783 F. Supp. 3d. 801, 810 (D. Vt. 2025) (ruling that petitioner "has presented, at the very least, a substantial claim of a First Amendment violation" because the government failed to "rebut [her] evidence showing that her op-ed is the but-for cause of her detention"); *Mahdawi v. Trump*, 785 F. Supp. 3d 214, 231 (D. Vt. 2025) (finding sufficient evidence to "rais[e] a 'substantial claim' of First Amendment retaliation"); *Ercelik v. Hyde*, No. 1:25-cv-11007, 2025 WL 1361543, at *13 (D. Mass. May 8, 2025) (ruling that "Petitioner has a high likelihood of success on the merits of his First Amendment [retaliation] claim"); *Mohammed H. v. Trump*, 781 F. Supp. 3d 886, 897 (D. Minn. 2025) (ruling that the government failed to "rebut[] Petitioner's claims of viewpoint-based targeting and retaliation"). These courts have found that these retaliatory actions chill the speech of noncitizens even beyond those directly targeted. *Am. Ass'n of Univ. Professors*, 802 F. Supp. 3d at 184 (finding that certain detention and deportation policies were undertaken "intentionally to chill the speech of other would be pro-Palestine and anti-Israel speakers"); *Ozturk*, 783 F. Supp. 3d at 815 ("Immediate release was also necessary to ameliorate the chilling effect that Ms. Ozturk's arguably unconstitutional detention may have on non-citizens present in the country."); *Mahdawi*, 781 F. Supp. 3d at 235 ("Mahdawi's . . . continued detention would likely have a chilling effect on protected speech.").

4.      The fear that Defendants will retaliate in other, non-immigration-related ways, is also reasonable. As explained in the attached declaration, CITR, its members, and its fiscal sponsor fear that the government will retaliate against them by initiating pretextual investigations or taking other adverse administrative actions to punish them for participating in this suit. Unfortunately, the current administration has routinely used bad-faith administrative subpoenas, tax inquiries, grand jury investigations, and the like, to retaliate against its political opponents. *See, e.g.*, *Media*

*Matters for America v. Fed. Trade Comm'n*, 805 F. Supp. 3d 105, 135–36 (D.D.C. 2025) (preliminarily enjoining civil investigative demand motivated by "retaliatory animus"). The administration's retaliatory conduct has been overt, and numerous courts have recognized it. *See, e.g.*, *Jenner & Block v. U.S. Dep't of Justice*, 784 F. Supp. 3d. 76 (D.D.C. 2025); *Perkins Coie LLP v. U.S. Dep't of Justice*, 783 F. Supp. 3d 105, 120-21 (D.D.C. 2025) (permanently enjoining executive order that was an "overt attempt to suppress and punish certain viewpoints"); *Bd. of Govs. of the Fed. Reserve Sys. v. United States*, No. 26-CV-12, 2026 WL 710202 (D.D.C. March 13, 2026) (dismissing criminal charges in circumstances strongly suggesting vindictive prosecution), *United States v. Comey*, No. 1:25-CR-272, 2025 WL 3266932 (E.D. Va. Nov. 24, 2025) (similar). CITR, its members, and its fiscal sponsor reasonably fear that they will be next in line in the administration's campaign of illegal retaliation.

5.     Accordingly, to safeguard the integrity of these proceedings, this Court should enter an order prohibiting Defendants from retaliating against any individual or entity for their participation in this lawsuit, and restricting Defendants from using information disclosed during this lawsuit in a retaliatory manner.

6.     This Court has the legal authority to enter such an order. First, Rule 26(c) gives this Court authority to "for good cause, issue an order to protect a party or person from . . . oppression[] or undue burden." Fed. R. Civ. P. 26(c)(1). The rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The 'good cause' standard is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *United States v. Microsoft Corp.*, 165 F.3d 952, 960 (D.C. Cir. 1999); *see Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 249 F. Supp. 3d 516, 520 (D.D.C. 2017). Second, this Court's

4

"inherent power to protect [its] integrity and prevent abuse of the judicial process," *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (internal quotation marks and citation omitted; alteration in original), includes the authority to prohibit retaliation against witnesses when they "reasonably fear retaliation and . . . the court's fact-finding may be materially impaired unless there is provided the tangible protection of a suitable court[. ]" *Ben David v. Travisono*, 495 F.2d 562, 564 (1st Cir. 1974); *see also Goninan v. Wash. Dep't of Corr.*, No. 3:17-cv-05714, 2018 WL 4630205, at \*2 (W.D. Wash. Sept. 26, 2018) ("Though more commonly used during discovery to insulate sensitive discovery materials, a protective order may also be used to protect a party or potential party from intimidation or retaliation.").

7.     Good cause exists here. Courts, including in this district, have repeatedly entered anti-retaliation protective orders that shield plaintiffs' immigration information from government agencies, precisely for the reason that "discovery into immigration status" can produce a "chilling effect." "Forcing those who allege discrimination to reveal their immigration status in order to have access to the courts may cause those facing discrimination, both citizens and undocumented people, to 'fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends.'" *U.S. EEOC v. SOL Mexican Grill LLC*, No. 18-CV-2227, 2019 WL 2896933 (D.D.C. June 11, 2019), at \*2 (quoting *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1065 (9th Cir. 2004)); *see generally Zapeda v. Rivera Landscaping, LLC*, No. 24-CV-1952, 2025 WL 401941 (D. Md. Feb. 5, 2025) ("Courts routinely bar or limit discovery into immigration status in cases involving claims under the FLSA and similar statutes, and have done so for decades." (collecting cases)); *Doe v. Noem*, No. 1:25-cv-10495, 2025 WL 990635, at \*2 (D. Mass. Apr. 2, 2025) (crediting noncitizen's fears that the government will "retaliate against him in immigration proceedings" for his participation in the case); *cf. Zeng Liu v. Donna Karan Int'l,*

*Inc.*, 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (concluding that unwarranted disclosure of immigration status would create "the danger of intimidation . . . and would inhibit plaintiffs in pursuing their rights" (internal quotations omitted)); *Rivera*, 364 F.3d at 1065 (9th Cir. 2004) (explaining that "chilling effect" from inquiries into immigration status can "unacceptably burden[] the public interest"). CITR and its members reasonably believe—based on the government's recent course of conduct, *see supra* ¶¶ 3–4—that the government might retaliate against them for their participation in these proceedings. *See* DeCell Decl. ¶¶ 4–6. Such retaliation would unacceptably taint these proceedings and impair this Court's fact-finding. *See Disability Rts. New Jersey, Inc. v. Velez*, No. 10-cv-3950, 2011 WL 2937355, at *5 (D.N.J. July 19, 2011) (noting that "the plaintiff seeks only to prohibit acts of retaliation that would interfere with the ability of the court to conduct a thorough and just inquiry into the dispute at hand"); *cf. United States v. Regeneron Pharms., Inc.*, No. 20-cv-11217, 2023 WL 3061505, at *5 (D. Mass. Apr. 21, 2023) (acknowledging concerns that information "will be used for purposes of retaliation and harassment rather than for any legitimate reason").

8.        Plaintiffs' proposed order is narrowly drafted to prevent improper retaliation without impeding Defendants from litigating this case. The central provisions of the proposed protective order, which is attached as **Exhibit B**, would forbid the government from retaliating against CITR or its members, *see* Proposed Protective Order ¶ 4, or from otherwise using any information elicited in this lawsuit in connection with any effort to take an adverse immigration action against noncitizens identified through this lawsuit, *see id.* ¶ 3. The order would not, however, interfere with Defendants' ability to defend against CITR's claims. *Cf. Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 471 (E.D. Pa. 1997) (limiting the use of a plaintiff's identity to "the prosecution or defense of the claims herein"). Indeed, other district courts have recently

entered similar orders, prohibiting the government from using information elicited during the case "for any immigration enforcement purpose," including after the litigation ends. *Doe v. Noem*, No. 25-cv-10495, 2025 WL 990635, at *1 n.1 (D. Mass. Apr. 2, 2025); *see also Am. Ass'n of Univ. Professors*, No. 1:25-cv-10685 (D. Mass. June 10, 2025), ECF No. 124 ("No noncitizen providing evidence shall, by reason thereof, suffer any adjustment in their immigration status.").

9.      Pursuant to Local Civil Rule 7(m), Plaintiff's counsel attempted to confer with Defendants' counsel regarding this motion, including by contacting attorneys within the U.S. Attorney's Office for the District of Columbia and the U.S. Department of Justice Civil Division's Federal Programs Branch and Office of Immigration Litigation, but were informed that an attorney has not yet been assigned to this matter.

10.     For these reasons, the Court should grant Plaintiffs' motion and enter the order attached as **Exhibit B**.

<table>
<tr><td>March 26, 2026</td><td>Respectfully submitted,</td></tr>
</table>

<table>
<tr><td>/s/ *Naomi Gilens*</td><td>/s/ *Carrie DeCell*</td></tr>
<tr><td>Naomi Gilens (D.C. Bar No. 90037831)*<br>Nicole Schneidman**<br>Protect Democracy Project<br>2020 Pennsylvania Avenue NW, Suite 163<br>Washington, DC 20006<br>(202) 579-4582<br>naomi.gilens@protectdemocracy.org</td><td>Carrie DeCell (D.C. Bar No. 1015491)<br>Raya Koreh*<br>Kiran Wattamwar**<br>Anna Diakun**<br>Katie Fallow**<br>Alex Abdo**<br>Jameel Jaffer (D.C. Bar No. MI0067)<br>Knight First Amendment Institute<br>  at Columbia University<br>475 Riverside Drive, Suite 302<br>New York, NY 10115<br>(646) 745-8500<br>carrie.decell@knightcolumbia.org<br><br>*Counsel for Plaintiff*<br><br>* Application for admission to</td></tr>
</table>

7

D.D.C. pending.

** Motion for admission *pro hac vice* forthcoming.

# CERTIFICATE OF SERVICE

I, the undersigned counsel, certify that on March 26, 2026, I electronically filed the foregoing in the U.S. District Court for the District of Columbia using the CM/ECF system. Since opposing counsel has not yet registered their appearance on CM/ECF, I also served paper copies via FedEx to Defendants at the addresses below:

Pamela Bondi, in her official capacity as Attorney General of the United States
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Kristi Noem, in her official capacity as Secretary of Homeland Security
Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

Marco Rubio, in his official capacity as Secretary of State
The Executive Office of the Legal Adviser and Bureau of Legislative Affairs
600 19th Street NW, Suite 5.600
Washington, DC 20522

U.S. Attorney's Office for District of Columbia
Civil Process Clerk
601 D Street, NW
Washington, DC 20530

/s/ *Carrie DeCell*
Carrie DeCell

9