**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

COALITION FOR INDEPENDENT
TECHNOLOGY RESEARCH,

      Plaintiff,

    v.

MARCO RUBIO, in his official capacity as
Secretary of State; KRISTI NOEM, in her
official capacity as Secretary of Homeland
Security; and PAMELA BONDI, in her
official capacity as Attorney General of the
United States,

      Defendants.

Civil Action No. 1:26-cv-00815

**DECLARATION OF CLARE MELFORD**

I, Clare Melford, declare and state as follows:

1.     I am the co-founder and Chief Executive Officer of the Global Disinformation Index ("GDI"), a U.S.-based non-profit organization and an organizational member of Coalition for Independent Technology Research ("CITR"), which is the plaintiff in this matter. I am submitting this declaration in support of CITR's motion for a preliminary injunction.

2.     I am over the age of eighteen. I have personal knowledge of the facts stated in this declaration, and, if called to testify, I could and would competently do so under oath.

3.     I am a citizen and resident of the United Kingdom.

4.     In 2018, I co-founded GDI, a non-profit research and educational organization, with the goal of informing industry and the public about disinformation and its harms. GDI assesses the "advertising brand risk" of open web news websites and provides risk assessments to advertising

technology companies, enabling advertisers to reduce the unintended monetization of deceptive and highly adversarial online content.

5.      As the CEO of GDI, I run the day-to-day operations of the organization and manage high-level strategy, fundraising, and partner relationships. I am the public spokesperson for GDI and GDI's top liaison to governments and policymakers.

6.      I have traveled to the United States several times in my role as CEO of GDI, including to meet with GDI colleagues, establish relationships with potential U.S.-based funders to support GDI's work in the United States, speak publicly about GDI and its work, and collaborate with researchers, research institutions, and other partners in the United States. One of my previous trips to the United States was critical to securing a multi-year grant for GDI to study disinformation globally.

7.      Over the past several months, I have closely followed the Trump administration's new U.S. immigration policy targeting individuals working in fields including misinformation and disinformation, fact-checking, content moderation, trust and safety, or compliance (the "Censorship Policy" or "Policy").

8.      I planned to travel to the United States in January 2026 to meet with GDI colleagues, collaborators, and funders. During that trip, I also planned to present on GDI's work as a guest speaker at a New York University class on disinformation.

9.      On or about October 6, 2025, in anticipation of my planned January 2026 trip to the United States, I submitted an application for the Electronic System for Travel Authorization ("ESTA"), a program operated by U.S. Customs and Border Protection ("CBP").

10.      On October 7, 2025, I received notification that my ESTA application was approved.

11.     On December 23, 2025, I received an email from CBP informing me that my ESTA application status had changed from "approved" to "pending."

12.     Later that day, in a post on X, Under Secretary of State for Public Diplomacy and Public Affairs Sarah B. Rogers identified me as one of the "sanctioned" individuals purportedly involved in the "global censorship-industrial complex." In her post, Under Secretary Rogers included a screenshot of a GDI report on hate speech and claimed, among other things, that GDI had "joined the deleterious EU Code of Practice on Disinformation."

13.     The next day, I received another email from CBP informing me that I was not authorized to travel to the United States. I did not receive any explanation from CBP for this decision.

14.     As a direct result of the Defendants' actions against me under the Censorship Policy, I had to cancel my trip and postpone travel to the United States indefinitely.

15.     If the Censorship Policy were no longer in place, I would plan to return to the United States to meet with GDI colleagues, establish relationships with potential U.S.-based funders to support GDI's work in the United States, speak publicly about GDI and its work, and collaborate with researchers, research institutions, and other partners in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: March __24__, 2026          _____
                                         Clare Melford

3