**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

COALITION FOR INDEPENDENT
TECHNOLOGY RESEARCH,

      Plaintiff,

    v.

MARCO RUBIO, in his official capacity as
Secretary of State; KRISTI NOEM, in her
official capacity as Secretary of Homeland
Security; and PAMELA BONDI, in her
official capacity as Attorney General of the
United States,

      Defendants.

Civil Action No. 1:26-cv-00815

## DECLARATION OF DANIEL ROGERS

I, Daniel Rogers, declare and state as follows:

1. I am the co-founder and Executive Director of the Global Disinformation Index ("GDI"), a U.S.-based non-profit organization and an organizational member of Coalition for Independent Technology Research ("CITR"), which is the plaintiff in this matter. I am submitting this declaration in support of CITR's motion for a preliminary injunction.

2. I am over the age of eighteen and a U.S. citizen. I have personal knowledge of the facts stated in this declaration, and, if called to testify, I could and would competently do so under oath.

3. I am a computational physicist with experience supporting defense and intelligence community cyber operations, as well as startup experience in the defense, energy, and biotech sectors. I am an author and expert in the field of quantum cryptography, and I have published

numerous patents and papers on that subject, among others. In 2013, I founded and led Terbium Labs, an information security startup based in Maryland.

4. In 2018, alongside Clare Melford, I co-founded GDI, a non-profit research and educational organization, with the goal of informing industry and the public about disinformation and its harms. GDI assesses the "advertising brand risk" of open web news websites and provides risk assessments to advertising technology companies, enabling advertisers to reduce the unintended monetization of deceptive and highly adversarial online content.

5. I currently serve as GDI's Executive Director and as a GDI board member. I work with Ms. Melford to develop overall organization strategy, assist with key funder relations, and oversee GDI's U.S. legal and policy strategy in coordination with GDI's legal counsel.

6. In 2023, GDI became a signatory of the European Union's Strengthened Code of Practice on Disinformation.

7. I also currently serve as an Adjunct Assistant Professor at New York University's Center for Global Affairs, where I teach a course on Disinformation and Narrative Warfare.

8. Over the past several months, I have closely followed the Trump administration's new U.S. immigration policy targeting individuals working in fields including misinformation and disinformation, fact-checking, content moderation, trust and safety, or compliance (the "Censorship Policy" or "Policy").

9. On or about September 15, 2025, Ms. Melford and I started planning for her anticipated trip to the United States in January 2026. We planned for her to meet with GDI colleagues, other researchers and partners, and potential funders during that trip. In addition, I invited Ms. Melford to speak at a session of the Disinformation and Narrative Warfare class that I teach at New York University's Center for Global Affairs.

10.     On December 23, 2025, Under Secretary of State for Public Diplomacy and Public Affairs Sarah B. Rogers posted on X the names of five individuals whom the State Department was subjecting to "sanctions" and generally barring from the United States under the Censorship Policy, and one of those individuals was Ms. Melford.

11.     Under Secretary Rogers's X post identifying Ms. Melford as a "sanctioned" individual included a screenshot of a GDI report on hate speech and claimed, among other things, that GDI had "joined the deleterious EU Code of Practice on Disinformation." The X post also accused GDI of "exhort[ing] censorship and blacklisting of American speech and press."

12.     Ms. Melford informed me of the "sanctions" imposed against her under the Censorship Policy and the resulting revocation of authorization for her to travel to the United States, which forced her to cancel her trip to the United States in January 2026 and postpone travel to the United States indefinitely. Her inability to travel to the United States substantially impairs GDI's ability to continue with its research relating to disinformation in the following ways.

13.     First, the Censorship Policy has deprived GDI of the ability to hear from and engage with its CEO in person. During her January 2026 trip to the United States, Ms. Melford had planned to meet with me and her other GDI colleagues and discuss her vision for GDI's future. Because she was unable to meet with her GDI colleagues in January, and because she will be unable to meet with me and her other U.S.-based GDI colleagues in person in the United States indefinitely, we have lost opportunities to receive and discuss her insights.

14.     Second, the Censorship Policy has deprived GDI of significant opportunities to collaborate with researchers, research institutions, and other partners in the United States. During her January 2026 trip to the United States, Ms. Melford and I had planned for her to meet with researchers, research institutions, and other partners who might benefit from GDI's research and

publications. Sharing the results of GDI's research with these potential collaborators in-person would have made it significantly more likely that they would use GDI's research in their own work and share GDI's research through their networks. Because of the Policy, however, she was unable to meet with these potential collaborators in January, and she will be unable to meet with potential collaborators in the United States indefinitely, significantly impairing GDI's ability to share its work with U.S.-based collaborators going forward.

15.     Third, the Censorship Policy prevented Ms. Melford from speaking publicly about GDI's work at a session of the Disinformation and Narrative Warfare class that I teach at New York University's Center for Global Affairs. I invited Ms. Melford to be a guest speaker for one of the class sessions at the beginning of the semester. Because of the Policy, Ms. Melford was unable to attend the class and speak with my students in January, and she will be unable to speak with students and others in the United States indefinitely, significantly impairing GDI's ability to share its research with U.S. audiences going forward.

16.     Fourth, the Censorship Policy has impaired GDI's ability to secure funding to continue its work in the United States. GDI has relied significantly on funding from U.S.-based foundations, and in-person introductions between Ms. Melford and new potential funders has proven essential to GDI's financial security. Ms. Melford's previous trip to the United States was critical to securing a multi-year grant for GDI to study disinformation globally. We had planned for Ms. Melford to meet with funders during her January 2026 trip to the United States. Because of the Policy, however, she was unable to meet with those funders in person in January, and she will be unable to meet with funders in person in the United States indefinitely, significantly impairing GDI's ability to engage with and secure funding from U.S.-based funders going forward.

17.     Finally, the Censorship Policy has deterred some U.S. funders from publicly associating with GDI. GDI had previously received permission from its funders to place their logos on GDI's website. Shortly after the December 23, 2025 announcement of "sanctions" against Ms. Melford, however, one funder requested that its logo no longer appear on GDI's website.

18.     If the Censorship Policy were no longer in place, Ms. Melford and I would resume planning Ms. Melford's return to the United States and scheduling in-person meetings for Ms. Melford to engage with GDI colleagues, establish relationships with potential U.S.-based funders to support GDI's work in the United States, speak publicly about GDI and its mission, and collaborate with researchers, research institutions, and other partners in the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: March __24__, 2026                    _____
                                                                              Daniel Rogers

5