Case No. 1:26-cv-815 (JEB)

# EXHIBIT 14

**INDEX TO THE ADMINISTRATIVE RECORD DOCUMENTS
PRODUCED ON FEBRUARY 6, 2026[1]**

*Ahmed v. Rubio, et al.*
Case No. 25 Civ. 10705 (LAP)

| Number | Document Title | Range |
|---|---|---|
| 1 | Approved Action Memo for the Secretary re Response Options to the European Commission's Fine of X Corp. Under the Digital Services Act (DSA) | DOS_001-004 |
| 2 | Tab 2: INA Section 237(a)(4)(C) ("4C") and Subjects Recommended for Deportability Determinations | DOS_005-006 |
| 3 | Tab 4: Memorandum for the Secretary of Homeland Security from Marco Rubio re Determination of Deportability under Section 237(a)(4)(C) of the INA | DOS_007-008 |
| 4 | Tab 5: 8 U.S.C. § 1227 – Deportable Aliens | DOS_009-010 |

---

[1]     This index has been prepared for the convenience of the Court and the parties.  The index is not part of the administrative record.

REC1|Approve|12-19-2025|MR|MAR
REC2|Approve|12-19-2025|MR|MAR
REC3|Approve|12-19-2025|MR|MAR
REC4|Approve|12-19-2025|MR|MAR
REC5|Approve|12-19-2025|MR|MAR
REC6|Approve|12-19-2025|MR|MAR



2025011334

United States Department of State

Washington, DC   20520

SENSITIVE BUT UNCLASSIFIED                December 16, 2025

**Action Memo for the Secretary**

FROM:            Under Secretary Rogers (R)

SUBJECT:      (SBU) Response Options to the European Commission's Fine of X
                       Corp. Under the Digital Services Act (DSA)

**(SBU)** Unrelated to Challenged Determination

███████████████████████████████████████

**Decision: ☐ Approve ☐ Disapprove ☐ Discuss**

**(SBU) Recommendation 2:** That you determine the presence and activities of
Privacy Act Protected, a Privacy Act Protected national and U.S. LPR, in the United States would have
potentially serious adverse foreign policy consequences for the United States,
rendering him deportable under Section 237(a)(4)(C) ("4C") of the INA.
(Approve/Disapprove by 12/19/25)
**Decision: ☐ Approve ☐ Disapprove ☐ Discuss**

**(SBU) Recommendation 3:** That you authorize notifying the Secretary of
Homeland Security of the determination regarding Privacy Act Protected as a basis for the
removal and authorize DHS and DOJ to use that notification in any immigration or
legal proceedings, as necessary.  (Approve/Disapprove by 12/19/25)

2025011334

**Decision:** ☐ **Approve** ☐ **Disapprove** ☐ **Discuss**

**(SBU) Recommendation 4:** That you determine the presence and activities of Imran Ahmen, a UK national and U.S. LPR, in the United States would have potentially serious adverse foreign policy consequences for the United States, rendering him deportable under 4C of the INA.
(Approve/Disapprove by 12/19/25)

**Decision:** ☐ **Approve** ☐ **Disapprove** ☐ **Discuss**

**(SBU) Recommendation 5:** That you authorize notifying the Secretary of Homeland Security of the determination as a basis for the removal and authorize DHS and DOJ to use that notification in any immigration or legal proceedings, as necessary.  (Approve/Disapprove by 12/19/25)

**Decision:** ☐ **Approve** ☐ **Disapprove** ☐ **Discuss**

**(SBU) Recommendation 6:** Unrelated to Challenged Determination

**Decision:** ☐ **Approve** ☐ **Disapprove** ☐ **Discuss**

**Background:**
(SBU) On December 5, the Commission announced the first-ever enforcement fine under the DSA, penalizing X Corp. €120 million (approximately $140 million) for alleged violations related to paid verification practices, advertising transparency, and researcher data access.  The decision is the culmination of a two-year investigation launched in December 2023 and preceded by July 2024 preliminary findings that X has rejected as unfounded.

(SBU) The EU adopted the DSA in October 2022 and entered it into force in February 2024.  Its heaviest obligations apply to "Very Large Online Platforms" (VLOPs), defined as services with more than 45 million monthly active users in the EU.  The act imposes strict content-moderation, risk-management, and transparency obligations.  Of the 17 designated VLOPs, 13 are U.S.-based

DOS_002

2025011334

-3-

(including X, Meta, Google, and Amazon), underscoring the law's impact on U.S. tech firms operating in Europe.  Fines can reach up to 6 percent of a company's global annual revenue, potentially billions for X Corp.  The company has 60–90 working days to comply and can appeal to the European Court of Justice.

(SBU) European officials framed the announcement as an assertion of "digital sovereignty."  Commission VP Henna Virkkunen asserted, "This decision is about the transparency of X and has nothing to do with censorship."  Anne Le Henanff, France's digital affairs minister, characterized the decision as historic, adding, "By sanctioning X, Europe shows it is capable of moving from words to action."  Germany's Digital Minister Karsten Wildberger asserted, "The bloc's digital rules apply to everyone, no matter where they come from."

(SBU) The EU's action against X Corp. is more than a regulatory dispute; it reflects a broader political struggle over information control and the influence of U.S. technology platforms in Europe.  X has surged to become the leading news app in every EU country, serving tens of millions of Europeans who use the platform daily to access uncensored information.  This widespread use allows EU citizens to bypass official EU channels and state-influenced media, challenging the European Commission's ability to shape the public narrative.

**Attachments**
    Tab 1 – ██Unrelated to Challenged Determination██
    Tab 2 – Recommended 4C Targets
    Tab 3 – Memo for Secretary Noem – ██Privacy Act Protected██
    Tab 4 – Memo for Secretary Noem – Ahmed
    Tab 5 – Legislation

**DOS_003**

2025011334

SENSITIVE BUT UNCLASSIFIED
-4-

Approved:   R – Sarah Rogers, Under Secretary [SBR]

Drafted:   R – ▓Privacy Act Protected▓, ext. ▓Privacy Act Protected▓  and cell: ▓Privacy Act Protected▓

Cleared:

| Bureau | Name | Clearance Status |
|--------|------|------------------|
| D: | Privacy Act Protected | ok |
| P: | Privacy Act Protected | ok |
| R: | Privacy Act Protected | ok |
| GPA | Privacy Act Protected | ok |
| C: | Privacy Act Protected | ok |
| L/FO: | Privacy Act Protected | ok |
| CA | Privacy Act Protected | ok |
| EUR/FO: | Privacy Act Protected | ok |
| DRL: | Privacy Act Protected | ok |

SENSITIVE BUT UNCLASSIFIED

DOS_004

2025011334

SENSITIVE BUT UNCLASSIFIED

## (SBU) INA Section 237(a)(4)(C) ("4C") and
## Subjects Recommended for Deportability Determinations

(SBU) Under Section 4C of the INA, an alien is deportable from the United States if the Secretary of State has reasonable grounds to believe the alien's presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States. R identified two U.S. LPRs: ▮Privacy Act Protected▮ and Imran Ahmed ▮Privacy Act Protected▮. Ahmed, who leads an NGO involved in policing "disinformation," has advocated for foreign regulatory action that negatively impacts American companies and citizens, and has been involved in efforts to pressure U.S. companies to restrict speech of Americans and demonetize disfavored American media sources. Based on the activities of ▮Privacy Act Protected▮ and Ahmed, their presence in the United States has potentially serious adverse foreign policy consequences for the United States, as they undermine the foreign policy objective of the Administration to protect freedom of expression, and roll back domestic encroachments on speech. Consistent with those foreign policy objectives articulated in the May 2025 3C policy and E.O. 14150 "American First Policy Directive to the Secretary of State," the foreign policy of the United States protects "core American interests" and "American citizens." Protecting the freedom of expression of U.S. citizens is a core U.S. interest, as is defending U.S. sovereignty from foreign encroachment. Given the Administration's priority and success in rolling back domestic encroachments on free speech, it is especially critical as a foreign policy objective to ensure these gains are not undermined by foreign officials and individuals.

(SBU) Recommend subjects:

1. **(SBU)** ▮Unrelated to Challenged Determination / Privacy Act Protected▮

SENSITIVE BUT UNCLASSIFIED

**DOS_005**

2025011334

**Unrelated to Challenged Determination / Privacy Act Protected**
████████████████████████████████

2. **(SBU) Imran Ahmed, CEO of Center for Countering Digital Hate (CCDH), United Kingdom**:  Ahmed was a key collaborator with the Biden administration on weaponizing the national security bureaucracy to censor U.S. citizens and pressure U.S. companies into censoring, and his group advocates for foreign regulatory action that extraterritorially impacts American citizens and companies.  Ahmed is a UK national, and a U.S. LPR.  Ahmed successfully led efforts to lobby Google to remove ads from the Federalist and ZeroHedge.  He is most known for the infamous "Disinformation Dozen" report, in which CCDH called for platforms to remove the accounts of American "anti-vaxxers," including HHS Secretary Kennedy. Shortly thereafter, twelve Democrat attorneys general sent letters to X and Facebook citing the report. White House officials in the previous administration pressured platforms to take action against CCDH's "disinfo dozen." More recently, leaked documents from CCDH show the organization listed "kill Musk's Twitter" and "trigger EU and UK regulatory action" as priorities. CCDH advocates for both the UK Online Safety Act and EU Digital Services Act (DSA). Ahmed was listed as a signatory in HateAid's petition calling on the European Commission to take action to ensure access of platform data to researchers under the DSA.

(SBU) Ahmed is currently in the United States.  If you determine they are deportable pursuant to your authority in INA 4C, the Executive Secretary will notify DHS of your determination, and DHS/ICE may elect to pursue removal proceedings, including possibly detaining ██Privacy Act Protected██ and Ahmed in the process.

(SBU) ███████████████**Attorney Work Product**███████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████

DOS_006

December 19, 2025

SENSITIVE BUT UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE

MEMORANDUM FOR THE SECRETARY OF HOMELAND SECURITY

FROM:      Marco Rubio

SUBJECT:   (SBU) Determination of Deportability under Section 237(a)(4)(C) of the INA

(SBU) I am writing to inform you I have determined that Imran Ahmed (DOB: ███ POB: UK), an alien in LPR status, is deportable under INA section 237(a)(4)(C) (8 U.S.C. 1227(a)(4)(C)).  I understand DHS may now initiate removal charges against him.

(SBU) Under INA section 237(a)(4)(C)(i), an alien is deportable from the United States if the Secretary of State has reasonable ground to believe the alien's presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States.  Under INA section 237(a)(4)(C)(ii), for cases in which the basis for this determination is the alien's past, current, or expected beliefs, statements, or associations that are otherwise lawful, the Secretary of State must personally determine that the alien's presence or activities would compromise a compelling U.S. foreign policy interest.

(SBU) Pursuant to these authorities, I have determined that Ahmed's activities and presence in the United States have potentially serious adverse foreign policy consequences and compromise a compelling U.S. foreign policy interest.  Ahmed is the CEO of the Center for Countering Digital Hate (CCDH).  Ahmed successfully led efforts to lobby Google to remove ads from the Federalist and ZeroHedge.  CCDH's infamous "disinformation dozen" report specifically called for deplatforming Secretary Robert F. Kennedy and others.  Leaked CCDH documents listed "kill Musk's Twitter" and "trigger EU and UK regulatory action" as priorities.  CCDH advocates for both the UK Online Safety Act and EU Digital Services Act (DSA).  Ahmed was listed as a signatory in HateAid's petition calling on the European Commission to take action to ensure access of platform data to researchers under the DSA.  This determination is based on the same foreign policy objectives articulated in my May announcement of a policy to restrict visa issuance under INA section 212(a)(3)(C) (8 U.S.C. 1182(a)(3)(C)) for foreign

SENSITIVE BUT UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE
-2-

nationals who censor Americans.  Consistent with E.O. 14150, American First Policy Directive to the Secretary of State, the foreign policy of the United States protects core American interests and U.S. citizens, and protecting the freedom of expression of Americans is a core American interest, as is defending American sovereignty from foreign encroachment.  This determination reflects this Department's efforts to reject encroachments upon American sovereignty, especially when such encroachments undermine the exercise of our fundamental right to free speech.

(SBU) The Department of State also requests the opportunity to consult with DHS on any public statements regarding this determination.

(SBU) I hereby expressly authorize use of this notification by the Department of Homeland Security in immigration court, and the Department of Justice in any judicial proceedings, as needed.

SENSITIVE BUT UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE

DOS_008

2025011334

---

**8 USC 1227: Deportable aliens**Text contains those laws in effect on March 6, 2025

---

**From Title 8-ALIENS AND NATIONALITY**CHAPTER 12-IMMIGRATION AND NATIONALITYSUBCHAPTER II-IMMIGRATIONPart IV-Inspection, Apprehension, Examination, Exclusion, and Removal
**Jump To:**Source CreditMiscellaneousReferences In TextPrior ProvisionsAmendmentsEffective DateSavings Provision

## §1227. Deportable aliens

### (a) Classes of deportable aliens

Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:

#### (4) Security and related grounds

##### (A) In general

Any alien who has engaged, is engaged, or at any time after admission engages in-
(i) any activity to violate any law of the United States relating to espionage or sabotage or to violate or evade any law prohibiting the export from the United States of goods, technology, or sensitive information,
(ii) any other criminal activity which endangers public safety or national security, or
(iii) any activity a purpose of which is the opposition to, or the control or overthrow of, the Government of the United States by force, violence, or other unlawful means,

is deportable.

##### (C) Foreign policy

###### (i) In general

An alien whose presence or activities in the United States the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States is deportable.

###### (ii) Exceptions

The exceptions described in clauses (ii) and (iii) of section 1182(a)(3)(C) of this title shall apply to deportability under clause (i) in the same manner as they apply to inadmissibility under section 1182(a)(3)(C)(i) of this title.

int]    [Print selection]

[OLRC Home]Help

---

**8 USC 1182: Excludable aliens**Text contains those laws in effect on January 4, 1995

---

**From Title 8-ALIENS AND NATIONALITY**CHAPTER 11-NATIONALITYSUBCHAPTER II-IMMIGRATIONPart II-Admission Qualifications for Aliens; Travel Control of Citizens and Aliens
**Jump To:**Source CreditFuture AmendmentsReferences In TextAmendmentsChange of NameEffective DateMiscellaneousRegulationsTermination DateExecutive DocumentsCross Reference

DOS_009

2025011334

## §1182. Excludable aliens

**(a) Classes of excludable aliens**

Except as otherwise provided in this chapter, the following describes classes of excludable aliens who are ineligible to receive visas and who shall be excluded from admission into the United States:

### (3) Security and related grounds

#### (C) Foreign policy

##### (i) In general

An alien whose entry or proposed activities in the United States the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States is excludable.

##### (ii) Exception for officials

An alien who is an official of a foreign government or a purported government, or who is a candidate for election to a foreign government office during the period immediately preceding the election for that office, shall not be excludable or subject to restrictions or conditions on entry into the United States under clause (i) solely because of the alien's past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States.

##### (iii) Exception for other aliens

An alien, not described in clause (ii), shall not be excludable or subject to restrictions or conditions on entry into the United States under clause (i) because of the alien's past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States, unless the Secretary of State personally determines that the alien's admission would compromise a compelling United States foreign policy interest.

##### (iv) Notification of determinations

If a determination is made under clause (iii) with respect to an alien, the Secretary of State must notify on a timely basis the chairmen of the Committees on the Judiciary and Foreign Affairs of the House of Representatives and of the Committees on the Judiciary and Foreign Relations of the Senate of the identity of the alien and the reasons for the determination.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IMRAN AHMED<br><br>                    Plaintiff,<br><br>        v.<br><br>MARCO RUBIO, in his official capacity as Secretary of State; SARAH B. ROGERS, in her official capacity as Under Secretary of State for Public Diplomacy; PAMELA BONDI, in her official capacity as Secretary of Homeland Secretary; TODD M. LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; JUDITH ALMODOVAR, in her official capacity as Acting Field Office Director of the New York Immigration and Customs Enforcement Office,<br><br>                    Defendants. | Case no. 1:25-cv-10705 |

## CERTIFICATION OF ADMINISTRATIVE RECORD

I, Ryan O'Donnell, hereby declare under penalty of perjury:

1. I am employed by the United States Department of State, Office of the Under Secretary of State for Public Diplomacy. The facts attested to herein are based upon my personal knowledge and upon information provided to me in my official capacity.

2. I certify, based upon my personal knowledge and upon information provided to me in my official capacity, that the following documents annexed hereto constitute the Department of State's Administrative Record in this matter.

1

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1476, that the foregoing is true and correct to the best of my knowledge.

Executed on February 6, 2026

Ryan P. O'Donnell

_____

2

SBU - LEGAL