UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR INDEPENDENT TECHNOLOGY RESEARCH,<br><br>    Plaintiff,<br><br>    v.<br><br>MARCO RUBIO, *et al*.,<br><br>    Defendants. | Civil Action No. 26-0815 (JEB) |

## DEFENDANTS' MOTION TO DISMISS AND FOR RELIEF FROM LOCAL RULE 7(N), AND MEMORANDUM IN SUPPORT THEREOF

**TABLE OF CONTENTS**

Introduction.................................................................................................................. 1

Background.................................................................................................................. 2

Legal Standard ............................................................................................................ 3

    I.       Rule 12(b)(1)................................................................................... 3

    II.     Rule 12(b)(6)................................................................................... 3

Argument ..................................................................................................................... 4

    I.       The Court Can Consider The Policy At The Motion To Dismiss Stage And Disregard Plaintiff's Improper Attempts To Enlarge It. ......................................... 4

    II.     Plaintiff's Reply To Its Preliminary Injunction Underscores Why Its Case Fails.. 7

          A.     CITR Lacks Associational Standing. ........................................... 7

          B.     CITR Lacks Organizational Standing. .......................................... 9

          C.     CITR's First Amendment Claim Fails. ...................................... 11

          D.     CITR's Fifth Amendment Claim Fails. ...................................... 15

          E.     CITR's APA Claims Fail. .......................................................... 16

    III.    The Court Cannot Consider Challenges to Deportability. .................................... 19

    IV.    Defendants Should Be Relieved of Their Obligation to File a Certified List of the Administrative Record and Serve the Administrative Record Simultaneously with this Motion. .............................................................................................. 20

Conclusion ................................................................................................................. 21

**TABLE OF AUTHORITY**

Page(s)

Cases

*A.M.S. v. Edlow*,
  No. CV 25-476 (RDM), 2026 WL 850779 (D.D.C. Mar. 27, 2026) ................................... 4, 20
*Alabama- Coushatta Tribe of Tex. v. United States*,
  757 F.3d 484 (5th Cir. 2014) ............................................................................................ 17
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 4
*Ass'n of Am. Med. Colleges v. United States*,
  217 F.3d 770 (9th Cir. 2000) ............................................................................................ 18
*Ass'n of Battery Recyclers, Inc. v. EPA*,
  716 F.3d 667 (D.C. Cir. 2013) .......................................................................................... 21
*AAUP v. Rubio*,
  2025 WL 2777659 (D. Mass. Sept. 30, 2025) .................................................................. 10
*Beckles v. United States*,
  280 U.S. 256 (2017) .......................................................................................................... 16
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 4
*Brown v. District of Columbia*,
  514 F.3d 1279 (D.C. Cir. 2008) .......................................................................................... 3
*Cannon v. District of Columbia*,
  717 F.3d 200 (D.C. Cir. 2013) ........................................................................................ 5, 6
*Carroll v. Office of Fed. Contract Compliance Programs*,
  235 F. Supp. 3d 79 (D.D.C. 2017) .................................................................................... 20
*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................................................ 9
*Clayton v. District of Columbia*,
  931 F. Supp. 2d 192 (D.D.C. 2013) .................................................................................... 3
*Cobell v. Kempthorne*,
  455 F.3d 301 (D.C. Cir. 2006) .......................................................................................... 17
*Commodity Futures Trading Comm'n v. Nahas*,
  738 F.2d 487 (D.C. Cir. 1984) ............................................................................................ 3
*Connecticut v. Dep't of Interior*,
  344 F. Supp. 3d 279 (D.D.C. 2018) .................................................................................. 20
*Curran v. Holder*,
  626 F. Supp. 2d 30 (D.D.C. 2009) ...................................................................................... 3
*Davis v. Federal Election Comm'n*,
  554 U.S. 724 (2008) ............................................................................................................ 7
*Davis v. World Sav. Bank, FSB*,
  806 F. Supp. 2d 159 (D.D.C. 2011) .................................................................................... 5
*Dep't of State v. Munoz*,
  602 U.S. 899 (2024) ............................................................................................................ 8

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ................................................................................................ 10
*FDIC v. Meyer*,
  510 U.S. 471 (1994) .................................................................................................. 3
*First Choice Women's Res. Centers, Inc. v. Davenport*
  No. 24-781, 2026 WL 1153029 (U.S. Apr. 29, 2026) ............................................ 11
*Flippin v. DOI,*
  Civ. Action No. 19-1221 (BAH), 2019 U.S. Dist. LEXIS 222860 (D.D.C. Dec. 31, 2019) ...... 4
*Haig v. Agee*,
  453 U.S. 280 (1981) ........................................................................................... 15, 16
*Hill v. Colorado*,
  530 U.S. 703 (2000) ................................................................................................ 16
*Hurd v. District of Columbia*,
  864 F.3d 671 (D.C. Cir. 2017) .................................................................................. 4
*John Doe No. 1 v. Reed*,
  561 U.S. 186 (2010) ................................................................................................ 11
*Kaempe v. Myers*,
  367 F.3d 958 (D.C. Cir. 2004) .................................................................................. 5
*Khalil v. President, United States*,
  164 F.4th 259 (3d Cir. 2025) .................................................................................. 15
*Kleindienst v. Mandel*,
  408 U.S. 753 (1972) .................................................................................................. 8
*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) .................................................................................................. 3
*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................ 10
*Lujan v. Nat'l Wildlife Fed.*,
  497 U.S. 871 (1990) ................................................................................................ 17
*Mdewakanton Sioux Indians of Minn. v. Zinke,*
  264 F. Supp. 3d 116 (D.D.C. 2017) ........................................................................ 20
*Miller v. Pacific Shore Funding*,
  224 F. Supp. 2d 977 (D. Md. 2002) .......................................................................... 5
*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024) ............................................................................ 11, 12, 13, 14
*Nat'l Ass'n of Home Builders v. Norton*,
  415 F.3d 8 (D.C. Cir. 2005) .................................................................................... 17
*Nat'l Urb. League v. Trump*,
  783 F. Supp. 3d 61 (D.D.C. 2025) ..................................................................... 11, 16
*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) .................................................................................................. 17
*Palestine Info. Off. v. Shultz*,
  853 F.2d 932 (D.C. Cir. 1988) ................................................................................ 16
*Papasan v. Allain*,
  478 U.S. 265 (1986) .................................................................................................. 4
*PETA v. Fish & Wildlife Serv.,*
  59 F. Supp. 3d 91 (D.D.C. 2014) ............................................................................ 21

*Pharm. Research & Mfrs. of Am. v. U.S. HHS*,
  43 F. Supp. 3d 28 (D.D.C. 2014) ........................................................................... 5
*Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia*,
  486 F.3d 1342 (D.C. Cir. 2007) ............................................................................ 21
*Rann v. Chao*,
  154 F. Supp. 2d 61 (D.D.C. 2001) ........................................................................... 3
*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ............................................................................................... 14
*Simon v. Eastern Ky. Welfare Rights Org.*,
  426 U.S 44 (1976) .................................................................................................. 10
*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................................. 21
*Talal Al-Zahrani v. Rodriguez*,
  669 F.3d 315 (D.C. Cir. 2012) .............................................................................. 21
*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ................................................................................................. 7
*Vill. of Bald Head Island v. Army Corps. of Eng'rs*,
  714 F.3d 186 (4th Cir. 2013) ................................................................................. 17
*Wash. State Grange v. Wash. State Repub. Party*,
  552 U.S. 442 (2008) ............................................................................................... 12

Statutes

8 U.S.C. § 1182 ............................................................................................... 8, 16, 19
8 U.S.C. § 1201 ........................................................................................................ 18
8 U.S.C. § 1227 .......................................................................................... 7, 14, 15, 20
8 U.S.C. § 1252 ................................................................................................... 14, 18

Rules

Fed. R. Civ. P. 12 ....................................................................................................... 3
Fed. R. Evid. 201 ....................................................................................................... 5

For the reasons laid out below and in their Opposition to Plaintiff's Motion for Preliminary Injunction ("Def's Opp." or "Opposition") (ECF No. 45), Defendants respectfully move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). Defendants also move for relief under Local Civil Rule ("Local Rule") 7(n)(1), which Plaintiff opposes.

## INTRODUCTION

This suit concerns a State Department policy aimed at protecting Americans' freedom of speech by deterring foreign actors from censoring protected expression within the United States. Concerned about efforts by foreign officials and other individuals to suppress Americans' speech, Secretary of State Marco Rubio instituted a policy that restricts visa issuance for foreign actors responsible for, or complicit in, such censorship (the "Policy"). The Policy does not identify any individuals subject to the Policy. Instead, the Policy lays out the criteria that the Secretary will consider when potentially making a foreign-policy-based determination to render a noncitizen ineligible for a visa and inadmissible to the United States. The criterion lists regulatory and law enforcement conduct like threatening arrest, fining American tech platforms, and ordering the removal of content from social media sites. It does not cabin the Secretary's broader authority to make foreign-policy-based determinations, it merely creates a channel for implementing visa restrictions for those working with governments to censor Americans' free speech. Plaintiff challenges the Policy under the First Amendment, Fifth Amendment, and APA, although this case is primarily a First Amendment facial challenge.

That facial challenge fails because the Policy is expressly geared toward government conduct: advancing regulatory and law enforcement actions against American free speech. Plaintiff cannot square its description of the Policy as geared toward certain viewpoints with the

Policy's actual scope. Further, because the thrust of the policy is geared toward censorship conduct, Plaintiff cannot overcome the Policy's plainly legitimate sweep by solely focusing on its descriptions of individual enforcement actions (which they wrongly cast as based on viewpoint discrimination). And even if Plaintiff were correct that speech alone was implicated, Plaintiff cannot overcome the high level of deference the Secretary is afforded when making foreign policy based determinations.

Plaintiff implicitly concedes in their preliminary injunction reply that its case cannot survive against the Policy itself by making spurious assertions that the Policy has somehow expanded. Plaintiff's attempt to ignore the Policy's plain language fails for at least three reasons. First, Plaintiff does not adequately allege an expansion of the Policy's scope, and government records—of which the Court may take judicial notice—contradict such a claim. Second, Plaintiff cannot obtain judicial review of a purported policy that Plaintiff has manufactured by stringing together a series of enforcement actions. And third, Plaintiff requires standing for each claim it seeks to press but does not even attempt to allege an injury from the host of enforcement actions that it now seeks to challenge, in addition to the Policy itself.

The Court should also not require the Administrative Record at this stage because Defendants do not rely on it in their motion and move to dismiss on jurisdictional grounds.

For these reasons and those outlined in their Opposition, the Court should dismiss Plaintiff's Complaint.

## BACKGROUND

For the sake of brevity and to not burden the Court with duplicative briefing, Defendants incorporate the background section from their Opposition.  *See* Def's Opp. (ECF No. 45) at 2-7.

**LEGAL STANDARD**

### I.       Rule 12(b)(1)

Federal Rule of Civil Procedure ("Rule") 12(b)(1) requires dismissal of claims where the Court "lack[s] jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "Rule 12(b)(1) presents a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "A federal court presumptively lacks jurisdiction in a proceeding until a party demonstrates that jurisdiction exists." *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 n.9 (D.C. Cir. 1984) (emphasis added); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction."). "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

While the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008), it need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations[,]" *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

### II.      Rule 12(b)(6)

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff.  *See Iqbal*, 556 U.S. at 678.  However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

**ARGUMENT**

I.    **The Court Can Consider The Policy At The Motion To Dismiss Stage And Disregard Plaintiff's Improper Attempts To Enlarge It.**

As an initial matter, the Court may consider the Policy, which Defendants have already filed in this case. The Policy, (ECF No. 45-2); Def's Opp. (ECF No. 45) at 3–4 (discussing the Policy). While this Policy was not attached to the Complaint, the Court is permitted to take judicial notice of "official, public documents" and "documents upon which the plaintiff's complaint necessarily relies." *Flippin v. DOI,* Civ. Action No. 19-1221 (BAH), 2019 U.S. Dist. LEXIS 222860, *5, n.2 (D.D.C. Dec. 31, 2019);  *A.M.S. v. Edlow*, No. CV 25-476 (RDM), 2026 WL 850779, at *3 (D.D.C. Mar. 27, 2026) (Holding that a court may take "judicial notice of facts outside the pleadings that are 'not subject to reasonable dispute' and that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'") (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017)). Thus, the Court should consider the Policy when deciding Defendants' Motion to Dismiss.

Further, Plaintiff's allegations that the Policy, released in May 2025, somehow expanded in December by a cable are blatantly contradicted by documents of which the Court may take judicial notice. The Court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004); *Davis v. World Sav. Bank, FSB,* 806 F. Supp. 2d 159, 172 (D.D.C. 2011) (holding that "when the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail.") (quoting *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 984 n. 1 (D. Md. 2002)). Contrary to Plaintiff's assertions, the December cable it cites to did not expand the Policy. *See* Pl's Reply (ECF No. 48) at 2-4; Compl. (ECF No. 1) ¶ 143. Instead, that cable "expand[ed] the requirement that an online presence review be conducted for all H-1B applicants and their dependents." U.S. Dep't of State, *Announcement of Expanded Screening and Vetting for H-1B and Dependent H-4 Visa Applicants*, TRAVEL.STATE.GOV (Dec. 3, 2025), available at https://travel.state.gov/content/travel/en/News/visas-news/announcement-of-expanded-screening-and-vetting-for-h-1b-and-dependent-h-4-visa-applicants.html ("December Cable" or "Cable").[1] Nowhere does the announcement of the December Cable state that the Policy has somehow expanded in scope. *Id.* Moreover, the exhibits attached to Plaintiff's preliminary injunction motion also contradict its assertion that the May 2025 Policy has expanded. Pl's Reply (ECF No. 48) at 6. And subsequent press releases about the Policy do not mention any such expansion. *Announcement of Actions to Combat the Global Censorship-Industrial Complex*, State

---

[1] The Court may take judicial notice of the government websites cited herein. *See* Fed. R. Evid. 201; *Pharm. Research & Mfrs. of Am. v. U.S. HHS*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies." (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013), and other cases)).

Department Press Release, ECF No. 11-24 Plaintiff principally relies on two unverified news reports about the December Cable to suggest it expanded the May 2025 Policy. *See* ECF Nos. 11-15 (NPR article) & ECF No. 11-16 (Reuters article).  But those news reports do not even state there was an expansion. The NPR article merely states the December Cable "refers to a policy announced … in May." ECF No. 11-15 at 3. And both articles describe the Policy as only targeting foreign "censorship or attempted censorship of protected expression in the United States." *Id.*; ECF No. 11-16 at 4. Plaintiff wrongly latches on to a statement in the NPR article where it claims the Cable instructs consular offices to review resumes for terms that may be associated with censorship, such as "combatting misinformation, disinformation or false narratives, fact-checking, content moderation, compliance, and trust and safety." ECF No. 11-15 at 4. But the article does not claim noncitizens are subject to the Policy solely, for example, by engaging in "trust and safety" work. Those are just investigatory terms that might signal censorship and require a closer review of their work. Plaintiff even conceded this point in its Complaint, stating that the December Cable merely "conveys the scope of activities subject to scrutiny under the Policy." Compl. (ECF No. 1) ¶ 143. Thus, Plaintiff's assertion that the Policy's scope has expanded is contradicted by the very sources Plaintiff cites and government records that the Court may take judicial notice.

Likewise, Plaintiff continues to wrongfully insist that the Policy somehow covers lawful permanent residents ("LPRs"). Pl's Reply (ECF No. 48) at 9. But the Policy concerns visa applicants and does not mention deportability. Def's Opp. (ECF No. 45) at 3–4. This is clear by Plaintiff's own exhibits: Plaintiff's preliminary injunction motion included the administrative record of Imran Ahmed, a lawful permanent resident whom Plaintiff alleges was identified for removal under the Policy, that plainly shows that the Department did not rely on the Policy when rendering him deportable. Def's Opp. (ECF No. 46) 4–6. Notably, Mr. Ahmed's deportability

- 6 -

determination was based on an Action Memo to the Secretary that invokes 8 U.S.C. § 1227(a)(4)(C) as the basis for his removal. Ahmed Administrative Record, ECF No. 11-23 at 2. While the Action Memo does refer to the Policy's goals, as well as other government pronouncements about its commitment to deter censorship, it does not rely on the Policy itself or its underlying authority for deportability, and instead solely relies on the Secretary's authority under 8 U.S.C. § 1227(a)(4)(C) to make a foreign policy determination that renders a noncitizen deportable. *See generally id.* Thus, Plaintiff's own exhibits contradict its assertion that the Policy has been expanded to target deportations. And Plaintiff's assertion that the Policy includes removability is plainly contradicted by the terms of the Policy and so should be disregarded.

Further, Plaintiff cannot challenge all enforcement actions taken pursuant to the Policy. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citing *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008)). Plaintiff does not even attempt to establish standing as to the host of unnamed enforcement actions it claims that it wants to review.

Thus, the Court should disregard Plaintiff's attempts to challenge the Policy's ongoing implementation and instead focus the analysis solely on the Policy itself.

## II.     Plaintiff's Reply To Its Preliminary Injunction Underscores Why Its Case Fails.

### A.     CITR Lacks Associational Standing.

As Defendants have already argued, Plaintiff lacks associational standing to pursue its claims. *See* Def's Opp. at 9-15.

First, in its reply, Plaintiff conceded that it does not assert standing for the two individuals purportedly targeted under the Policy, Ms. Melford and Mr. Ahmed. Pl's Reply (ECF No. 48) at

5, n.2. Plaintiff instead seeks standing only on behalf of Ms. Melford's organization, which is in turn an organizational member of CITR. *Id.* at 5. But, as Defendants have already explained, Plaintiff cannot assert standing on behalf of Ms. Melford's organization, which is foreclosed by both *Mandel* and *Munoz.* Def's Opp. at 12-13. Those cases hold, at most, that the Court will review the reason for a visa denial, if one is provided, under the facially legitimate, bona fide reason standard. *Id.* (discussing *Dep't of State v. Munoz,* 602 U.S. 899, 919 (2024) and *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)). *Mandel* did not hold that a company can challenge an entire visa policy because one of its employees was denied entry into the United States. Instead, *Mandel* limited visa denial review to a review of a single applicant based on information already available. Def's Opp. (ECF No. 45) at 13. Yet Plaintiff does not challenge the reason for Ms. Melford's travel authorization denial, but an investigatory policy that led to her allegedly being targeted for review under 8 U.S.C. § 1182(a)(3)(C) by the Secretary. At most, the narrow review permitted under *Munoz* and *Mandel* only allows for reviewing a specific individual's reason for visa denial, if it was published. And so, Ms. Melford's travel authorization denial cannot support a facial challenge to the Policy, which only led to her identification for review under 8 U.S.C. § 1182(a)(3)(C), and was not the reason for her denial.[2]

Plaintiff's other member declarants cannot justify standing since they do not allege they are engaged in conduct covered by the Policy. Critically, none of them even declare that they are assisting governments to censor speech. Plaintiff speculates that its two noncitizen declarants may

---

[2] Further, Ms. Melford's injury does not give Plaintiff standing to challenge the host of other government actions that Plaintiff seeks review of, including the December Cable by which Ms. Melford does not assert she was impacted by. Def's Opp. (ECF No. 45) at 12-13; Melford Declaration (ECF No. 11-3) ¶¶ 9-10 (noting she was denied a visa in October, before the release of the December Cable); *see generally* ECF Nos. 11-2–9 (CITR standing declaration where no one alleges they have been subject to increased vetting under the December Cable)

fall under the Policy since they are "complicit" in censorship, Pl's Reply (ECF No. 48) at 5, n.3, but the declarants themselves did not state they were complicit in foreign government censorship or list any specific foreign government censorship action that they work to enforce, Def's Opp. (ECF No. 45) at 13–15; *see generally* ECF Nos. 11-5 & 11-6 (noncitizen declarations failing to allege participation in any foreign government action). As Plaintiff's declarations do not assert they are covered by the Policy, they cannot be injured by it. This is all the more so because the policy is not self-executing and requires multiple levels of review—so that even if someone's conduct may fall under the Policy, it would need to be reviewed by multiple levels, including the Secretary (or his designee) before any enforcement action would occur. Def's Opp. (ECF No. 45) at 14.

Plaintiff's remaining arguments for associational standing rely on an incorrect reading of the Policy that is flatly contradicted by the Policy's plain text and the government records subject to judicial notice. *Supra* 4–7.

At bottom, CITR's declarant members do not have standing to sue because they have no concrete injury. Thus, Plaintiff lacks associational standing to challenge the Policy.

### B.    CITR Lacks Organizational Standing.

Plaintiff also lacks organizational standing to pursue its claims.  *See* Def's Opp. (ECF No. 45) at 15-18. Nowhere does Plaintiff allege that the Policy directly targets CITR. *See* Compl. ¶¶ 121–138. Instead, Plaintiff principally argues harm because its community might self-censor or be less likely to cross the U.S. borders to come to its events. Pl's Reply (ECF No. 48) at 7–9. But that is not a direct injury and is instead based on speculation about how third parties might react to the Policy for reasons unrelated to their participation in CITR. The Supreme Court repeatedly has "decline[d] to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decision of independent actors." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 414

(2013); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). This is especially so since Plaintiff does not explain how it has been directly targeted by the Policy or how its members will be for their involvement with Plaintiff. Pl's Reply (ECF No. 48) at 7–9. A plaintiff who "is not himself the object of the governmental action or inaction he challenges" should find it "'substantially *more* difficult' to establish" standing, not less. *Lujan,* 504 U.S. at 562 (emphasis added; citations omitted); *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 44, 44-45 (1976) ("indirectness of injury" generally "'make[s] it substantially more difficult'" to establish standing) (citation omitted). The Supreme Court has cautioned that the organizational standing doctrine is reserved for "unusual case[s]" and should not be "extend[ed]." *FDA v. All. for Hippocratic Med.,* 602 U.S. 367, 379 (2024).

Indeed, the district court in *AAUP* determined that the lead plaintiff group in that case *lacked* organizational standing. *See AAUP v. Rubio*, No. 25-10685-WGY, 2025 WL 2777659, at *44 (D. Mass. Sept. 30, 2025). As that court explained, the "harms" upon which AAUP attempted to rely—"deterred and diminished noncitizen participation in AAUP events and diverted resources from more typical core advocacy issues such as 'adjunctification' to dealing with immigration law"—were insufficient for an organization to demonstrate standing in its own right. *Id.*

At the preliminary injunction hearing, Plaintiff invoked *First Choice Women's Res. Centers, Inc. v. Davenport* to assert that they have organizational standing. (*"First Choice"*) No. 24-781, 2026 WL 1153029, at *1 (U.S. Apr. 29, 2026). But this case is readily distinguishable. *First Choice* concerned a subpoena to the plaintiff demanding it produce, among other things, a list of its donors. *Id.* at *1. The district court found the group had not been injured since the subpoena was not yet enforceable, but the Supreme Court held that the government demand on the organization alone created standing for a First Amendment challenge. *Id.* at *2. That case

concerned a direct harm (a subpoena targeted at the organization itself) and did not address instances where an organization has standing for indirect harms. *See generally id.* Here, CITR has not been directly targeted by the Government in any way—nor has it shown or alleged that its members are targeted for their association with Plaintiff. Thus, the case is inapplicable.

For the reasons already articulated in its Opposition, Plaintiff falls far short of that high bar for organizational standing, and the Court should decline to extend the doctrine here.

### C. CITR's First Amendment Claim Fails.

The arguments already articulated confirm that the Policy does not violate the First Amendment. *See* Def's Opp. (ECF No. 45) at 18–25. Thus, this Court should dismiss the First Amendment claim.

In its preliminary injunction reply, Plaintiff continues to try to make an as-applied challenge of its own making. But the "label is not what matters … Instead, the key considerations are the nature of the 'plaintiffs' claim and the relief that would follow.'" *Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 87 (D.D.C. 2025) (quoting *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010)). If those things "reach beyond the particular circumstances of the plaintiffs," then they must "satisfy the standards for a facial challenge." *Id*. (quoting *John Doe No. 1*, 561 U.S. at 194). Here, Plaintiff seeks to invalidate the Policy as to all enforcement against private individuals and so stretches well beyond its own members. Compl. (ECF No. 1) ¶ 141; *Id.* at Request for Relief. And this is evident from Plaintiff's own headers, which repeatedly assert that the Policy violates various constitutional provisions and the APA. *See* Pl's Mot. (ECF No. 48) at i; *Nat'l Urb. League*, 783 F. Supp. 3d at 88 (noting that, while not dispositive, the headers in a plaintiff's own brief revealed the true nature of their claims).

Plaintiff's decision to challenge the Policy facially has consequences. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024); Def's Opp. (ECF No. 45) at 19. Whereas "as-applied" challenges

concern a law's application to a particular set of facts, facial challenges concern the law's validity in the abstract. *See Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 450 (2008). "Facial challenges are disfavored for several reasons." *Id.* "Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Id.* (internal quotation marks omitted). "Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id.* (internal quotation marks omitted). "Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451. The Supreme Court "has therefore made facial challenges hard to win." *Moody*, 603 U.S. at 723.

For a facial challenge in the First Amendment context, "[t]he question is whether a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id*. Thus, "[t]he first step in the proper facial analysis is to assess the [challenged] laws' scope." *Id*. at 724. In a facial challenge, courts cannot ignore this requirement merely because a plaintiff has focused on the laws' application to certain situations. *See id.* (explaining parties' and lower courts' error in "focus[ing] on how the laws applied to the content-moderation practices that giant social-media platforms use," rather than "address[ing] the full range of activities the laws cover, and measur[ing] the constitutional against the unconstitutional applications"). Similarly here, Plaintiff cannot artificially limit its challenge to the policy's application to protected speech. Plaintiff "chose to litigate these [claims] as facial challenges, and that decision comes at a cost." *Moody*, 603 U.S. at 723.

The Policy has a "plainly legitimate sweep" and so is not overbroad, as it is geared toward noncitizens that support foreign governments in censoring or attempting to censor free speech. Def's Opp. (ECF No. 45) at 19-20. Plaintiff asserts that the Policy solely targets individuals based on viewpoint discrimination. Pl's Reply (ECF No. 48) at 13. But the Policy does not state individuals will be targeted based solely on their views on content moderation. Policy, ECF No. 45-2 at 2 (identifying actions that could subject someone to the Policy's target class). All of the actions listed as potentially subjecting a foreign national to the Policy involve aiding governmental action, such as "threatening arrests," "ordering American tech platforms to freeze payments", and "requiring that American tech platforms adopt content moderation policies." *Id.* Simply advocating for content moderation is not mentioned. *Id.* Further, the December press release concerning enforcement actions plainly states that the Secretary found that those individuals "have advanced censorship crackdowns by foreign states." *Announcement of Actions to Combat the Global Censorship-Industrial Complex*, State Department Press Release, ECF No. 11-24.[3] While a challenge to specific enforcements should be as-applied challenges, the examples Plaintiff lays out do not even show a clear case of viewpoint discrimination.[4] And, even if the Court disagreed with

---

[3] As already explained, the Policy does not cover Mr. Ahmed, but his separate deportability determination was also based on his working advancing foreign government censorship. Ahmed's Administrative Record (ECF No. 11-23) at 5 (noting that he was rendered deportable because he "advocated for foreign regulatory action that negatively impacts American companies and citizens, and has been involved in efforts to pressure U.S. companies to restrict speech of Americans and demonetize disfavored American media sources.").

[4] Plaintiff's attempts to dispute the reasons for the enforcement actions are barred by *Munoz* and *Mandel*, which expressly do not allow a third party to look behind the official rationale given for an enforcement action. And Plaintiff cites to no authority that would allow it to review the underlying basis for all enforcement actions, when such disclosure would not even be available in an as applied challenge. Moreover, as already explained, tweets and non-official pronouncements should not be considered. Def's Opp. (ECF No. 45) at 24–25.

the Government, any individual instance of speech being targeted would have to be weighed against the Policy's "plainly legitimate sweep", which is geared toward targeting foreign government censorship. Since the thrust of the Policy is aimed at participation in specific foreign government actions, the Policy has a plainly legitimate sweep. In any event, the Policy's legitimate scope outweighs any free-speech interests of noncitizens at issue in this case. Plaintiff's challenge would still fail under the *Mandel* standard because there is a facially legitimate and bona fide justification for the Policy. Def's Opp. at 21–25. Despite invoking *Mandel* for standing purposes, Plaintiff does not seriously attempt to argue that the Policy fails under the *Mandel* standard. *See generally* Pl's Reply (ECF No. 48) at 12. Plaintiff only argues that the Government cannot deny someone admission based solely on their speech, but the Policy does not target individuals for review based solely on speech. *Id.* Rather, the Policy targets individuals whose actions advance foreign governments' censorship of free speech in the United States. This is a facially legitimate and bona fide justification for a denial pursuant to the Secretary's discretionary authority to make foreign policy interest determinations. Def's Opp. at 23.

Finally, Plaintiff tries again to assert that the Policy covers deportability determinations and so argues that strict scrutiny should apply. Pl's Reply (ECF No. 48) at 9–14. Yet, as explained above, the Policy does not include deportability determinations, and those decisions are based on the Secretary's discretionary foreign policy authority under 8 U.S.C. § 1227(a)(4)(C), which is in no way curtailed or altered by the Policy. Def's Opp. (ECF No. 45) at 4-5. Further, the proper channel for First Amendment challenges to deportability determinations is through removal proceedings. *See e.g.*, 8 U.S.C. § 1252(a)(2)(D) (preserving courts of appeals' jurisdiction over constitutional claims in review of removal proceedings); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 477 (1999) (holding challenges to removal, including First Amendment

- 14 -

ones, must be brought in removal proceedings); *Khalil v. President, United States*, 164 F.4th 259, 279 (3d Cir. 2025) (recounting that the petition-for-review process permits review of First Amendment challenges). Thus, this argument should be disregarded.

Regardless, Plaintiff is wrong that strict scrutiny would apply. Strict scrutiny cannot apply to LPRs because Congress afforded the Secretary of State discretion to charge someone with removability under the foreign policy charge. Section 1182(a)(3)(C) specifically notes "past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States" could not be used as a visa denial ground unless the Secretary determines that the alien's presence would compromise "a compelling United States foreign policy interest." *See* also 8 U.S.C. § 1227(a)(4)(C) (incorporating this standard for deportability determinations); Def's Opp. (ECF No. 45) at 4-5. And the Secretary should be afforded deference in that determination. *Id.* at 25, 31. Finally, even if strict scrutiny applied, the Policy would meet that standard since the Government has a compelling interest in who enters and resides in the United States. Def's Opp. (ECF No. 45) at 24, n.5. Indeed, the Supreme Court has squarely held "that no governmental interest is more compelling than the security of the Nation," and "[p]rotection of the foreign policy of the United States is a governmental interest of great importance." *Haig v. Agee*, 453 U.S. 280, 307 (1981).

Thus, Plaintiff's First Amendment claim fails.

### D.   CITR's Fifth Amendment Claim Fails.

Plaintiff's Fifth Amendment claim should be dismissed for the reasons already articulated in Defendants' Opposition. Def's Opp. (ECF No. 45) at 26–28. Plaintiff again argues that the Policy's terms are subject to interpretation, but does not meaningfully address that this Policy is internal guidance to assist the Secretary in making discretionary determinations. Pl's Reply (ECF No. 48) at 15–16. Plaintiff argues that the Policy may be subject to void-for-vagueness challenges

because of the public pronouncements about it. *Id.* But Plaintiff cites to no case that states a public pronouncement of a policy is subject to Fifth Amendment challenges. And for its part, the Supreme Court has refused to extend the vagueness doctrine beyond the statutory context. *See, e.g.*, *Beckles v. United States,* 280 U.S. 256, 263 (2017) (refusing to apply the void for vagueness doctrine to the sentencing guidelines). And again, the Policy at issue here is an internal directive by the Secretary identifying a target class of individuals potentially subject to visa denials based on a foreign policy interest determination, 8 U.S.C. § 1182(a)(3)(C). Def's Opp. (ECF No. 45) at 2–4, 27. Plaintiff does not even claim that 8 U.S.C. § 1182(a)(3)(C) is vague, only that the Secretary's internal guidance to subordinates is vague. *Id.* Thus, the Policy cannot be void for vagueness.

Even if the Policy could be subject to a facial vagueness challenge, that claim would still fail. Plaintiff does not address that "[t]he Supreme Court has long recognized that the special exigencies of foreign policy require Congress to draft statutes that 'provide a standard far more general than that which has always been considered requisite with regard to domestic affairs.'" *Palestine Info. Off. v. Shultz*, 853 F.2d 932, 944 (D.C. Cir. 1988); Def's Opp. (ECF No. 45) at 27. And Plaintiff concedes this challenge is facial, Pl's Reply (ECF No. 48) at 15, which requires them to "show that the provisions are not 'valid in the vast majority of their intended applications.'" *Nat'l Urb. League,* 783 F. Supp. 3d at 92 (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). Plaintiff has not made this showing, nor could it since the Policy is geared toward a clearly articulated list of foreign-censorship related conduct. Def's Opp. (ECF No. 45) at 4 (discussing criteria for conduct that falls under the Policy).

Thus, the Court should dismiss Plaintiff's Fifth Amendment claim.

### E.    CITR's APA Claims Fail.

Plaintiff's APA claims also fail for the reasons outlined in Defendants' Opposition. Def's Opp. (ECF No. 45) at 28–32. Plaintiff's reply does not cure the fundamental defects with its claims.

Final Agency Action. Plaintiff's reply asserts that it can challenge not only the Policy, but the Department's ongoing implementation of the Policy. Pl's Reply (ECF No. 48) at 16–18; Compl. (ECF No. 1) ¶ 146 (stating the policy consists of not only the Policy but enforcement actions and ongoing implementation efforts). This is incorrect. It is blackletter law that Plaintiff must allege "an identifiable action or event" and "direct [their] attack against some particular 'agency action' that causes [them] harm." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891 (1990); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) (APA limits judicial review to "circumscribed, discrete agency actions"). These final agency actions must be "circumscribed [and] discrete." *S. Utah*, 542 U.S. at 62. The APA does not provide for "general judicial review of [an agency's] day-to-day operations," *Lujan*, 497 U.S. at 899, like "constructing a building, operating a program, or performing a contract," *Vill. of Bald Head Island v. Army Corps. of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013). The APA thus contains "a prohibition on programmatic challenges," meaning "challenges that seek 'wholesale improvement' of an agency's programs by court decree." *Alabama- Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 490 (5th Cir. 2014) (cleaned up). "Because 'an on-going program or policy is not, in itself, a final agency action under the APA,' [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation omitted). Thus, Plaintiff's attempt to challenge the Policy's implementation fails.

Framed properly, Plaintiff's challenge to the Policy itself also fails because it is not a final agency action. The Policy does not "impose any obligation, deny any right, or fix any legal relationship." *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005); Def's Opp. (ECF No 45) at 29–30. Plaintiff's reliance on enforcement actions and the December Cable do not somehow make the Policy itself a final agency action. While Plaintiff claims that the December

- 17 -

Cable required visa applicants to turn their social media accounts to "public", *Announcement of Expanded Screening*, supra., that requirement applies to a broader screening initiative than just actions related to the Policy and is distinct from the Policy itself. And Plaintiff ignores that the December Cable is not a final agency action since it is merely a part of an investigatory step. *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 781 (9th Cir. 2000) ("An investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action."); Def. Opp. (ECF No. 45) at 29–30.

    Thus, Plaintiff fails to allege the Policy is a final agency action.

    Adequate Remedy At Law. While not covered by the Policy and thus immaterial to this suit for that reason alone, any APA challenge to deportability determinations would fail since there is an adequate remedy at law. For the reasons already articulated, a noncitizen subject to a foreign-policy-based deportability determination has an adequate remedy at law. Pl's Reply (ECF No. 48) at 30. Plaintiff argues that it can assert removability challenges but ignores that no one can review deportability determinations under the APA, and instead they must be channeled through the exclusive administrative scheme that Congress designed for immigration. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), (g); *see also* 8 U.S.C. § 1201(i); Def's Opp. (ECF No. 45) at 30; 32–39. Further, Plaintiff also ignores that it does not allege standing on behalf of anyone subject to a deportability determination. *See generally* Compl.

    Merits of the Policy. The Policy is not arbitrary and capricious and does not exceed statutory authority. Def's Opp. (ECF No. 45) at 30–31. Plaintiff reiterates its argument that the Policy did not itself identify any foreign censorship before its implementation, Pl's Reply (ECF No. 48) at 18–19, but (even if true) this ignores that the Policy merely identifies a wrong that the Department will respond to if specific conduct is identified. The Policy is not self-executing and

does not label any noncitizen as having participated in foreign censorship. Def's Opp. (ECF No. 45) at 3–4 (discussing the Policy). In the Policy, the Secretary is merely approving what conduct may be considered worthy of a foreign-policy-based visa denial or revocation decision. And his stated objective–to deter foreigners from censoring Americans and prevent those that do from entering the United States–is facially legitimate and within his statutorily defined authority. Def's Opp. (ECF No. 45) at 30–31.

Plaintiff also wrongly argues that the Secretary needed to inform Congress of the Policy based on 8 U.S.C. § 1182(a)(3)(C). Pl's Reply (ECF No. 48) at 26. But that again underscores Plaintiff's misunderstanding of the Policy. Section 1182(a)(3)(C)(iv) only requires notification to Congress when certain noncitizens are actually subject to an inadmissibility determination pursuant to 1182(a)(3)(C)(iii). Since the Policy itself does not deny a visa or make an inadmissibility determination as to any particular individual, notification to Congress is not statutorily required.

### III.    The Court Cannot Consider Challenges to Deportability.

As explained in the Opposition, the Court cannot consider challenges to deportability. Def's Opp. (ECF No. 45) at 32–39. Again, deportability determinations are not covered under the Policy, and instead they are separate, standalone decisions made by the Secretary. *See e.g.* Ahmed Administrative Record, ECF No. 11-23 (a separate action memo which laid out the reasons for his deportability determination). But to the extent Plaintiff has standing to challenge standalone deportability decisions (which it does not), those decisions are jurisdictionally barred. Def's Opp. (ECF No. 45) at 32–39.

In Plaintiff's reply, it does not dispute that it is jurisdictionally barred from challenging individual actions but argues that it is instead targeting a policy that led to Mr. Ahmed's deportation. Pl's Reply (ECF No. 48) at 20. This assertion is plainly contradicted by the documents

attached to Plaintiff's preliminary injunction motion. Ahmed Administrative Record, ECF No. 11-23. Instead, that determination is solely based on the Secretary's discretionary authority under 8 U.S.C. § 1227(a)(4)(C)—which is in no way constrained or redefined by the Policy. *Id.* And even if they could challenge a policy as applied to deportability determinations, Plaintiff in effect seeks an injunction barring the Secretary from carrying out his authority under Section 1227(a)(4)(C), which is squarely barred by Section 1252(f)(1). Def's Opp. (ECF No. 45) at 38–39.

## IV. Defendants Should Be Relieved of Their Obligation to File a Certified List of the Administrative Record and Serve the Administrative Record Simultaneously with this Motion.

Defendants should be excused from Local Civil Rule 7(n)(1)'s requirement that Defendants file a certified list of an administrative record and serve an administrative record simultaneously with this dispositive motion.

An administrative record is not necessary to resolve this motion because Defendants have moved to dismiss by relying entirely on the facts alleged in the Complaint or facts upon which the Court may take judicial notice. *A.M.S.,* 2026 WL 850779, at *7 (not requiring compliance with Rule 7(n)(1) where the government did not rely on the administrative record in an APA action challenging a substantive agency policy).

Indeed, courts in this district routinely grant the government's requests to defer the filing of a certified list of the contents of the administrative record when it is unnecessary in deciding a dispositive motion. *See, e.g., Connecticut v. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (granting federal defendant's motion to waive compliance with Local Civil Rule 7(n) because the court did not need to consider the administrative record in evaluating the motions before it); *Mdewakanton Sioux Indians of Minn. v. Zinke,* 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017) (same); *Carroll v. Office of Fed. Contract Compliance Programs*, 235 F. Supp. 3d 79, 81

n.1 (D.D.C. 2017); *PETA v. Fish & Wildlife Serv.,* 59 F. Supp. 3d 91, 94 n.2 (D.D.C. 2014) (waiving compliance with Local Civil Rule 7(n) and dismissing complaint).

Further, this Court should determine whether it has jurisdiction over this case before requiring Defendants to compile and certify the administrative record. The Court must determine that it has jurisdiction before proceeding to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.") (citation omitted); *see also Talal Al-Zahrani v. Rodriguez*, 669 F.3d 315, 318 (D.C. Cir. 2012) ("Because a federal court without jurisdiction cannot perform a law-declaring function in a controversy, 'the Supreme Court [has] held "that Article III jurisdiction is always an antecedent question" to be answered prior to any merits inquiry.'" (quoting *Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia*, 486 F.3d 1342, 1346 (D.C. Cir. 2007))); *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 674 (D.C. Cir. 2013) ("this Circuit treats prudential standing as a jurisdictional issue which cannot be waived or conceded" (citations and quotations omitted)). Thus, the Court must first determine whether it has jurisdiction given that Defendants have demonstrated in the first instance that no judicial review is available here.

Finally, waiving the Administrative record requirement here is particularly proper where Plaintiff has sought to challenge a sprawling host of agency actions and the entirety of a Policy's implementation, which is not authorized under the APA and which it lacks standing to do.

As a result, excusing Defendants from Local Civil Rule 7(n)'s requirements at this juncture would promote judicial economy and conserve resources.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint.

\*       \*       \*

- 21 -

Dated: May 15, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _/s/ Zachariah Weston Lindsey_
    Zachariah (Zack) Weston Lindsey
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    202-252-6612

_Attorneys for the United States of America_

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COALITION FOR INDEPENDENT
TECHNOLOGY RESEARCH,

Plaintiff,

v.

MARCO RUBIO, *et al.*,

Defendants.

Civil Action No. 26-0815 (JEB)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' motion to dismiss, and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED; and it is further

ORDERED that this action is DISMISSED WITH PREJUDICE.

SO ORDERED:

_____                    _____
Date                                   United States District Judge

- 23 -