UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR INDEPENDENT TECHNOLOGY RESEARCH,<br><br>Plaintiff,<br><br>v.<br><br>MARCO RUBIO, *et al.*,<br><br>Defendants. | Civil Action No. 26-0815 (JEB) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO CLARIFY STAY ORDER**

On July 14, 2026, this Court entered a preliminary injunction enjoining Defendants from enforcing a "policy of subjecting noncitizens to visa denial or revocation, exclusion, or removal based on research, reporting, advocacy, or other work involving misinformation, disinformation, fact checking, content moderation, compliance, or trust and safety." ECF No. 53 ("Stay Order") ¶ 3. In compliance with that Order, the Department of State ("State") is working to ensure that no final determinations are made on visas pursuant to those criteria. However, State does not interpret this order to prohibit it from continuing to vet applicants, which is not stated in the Stay Order. Plaintiff incorrectly seeks an order requiring State to cease vetting applicants for involvement in censorship. Restricting what information State can obtain about applicants was not covered in the Stay Order and would be a substantial expansion of the Stay Order. Thus, Defendants oppose Plaintiff's Motion to Clarify.

Rule 65(d) requires an injunction to "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). As the Supreme Court has explained, "the specificity provisions of Rule 65(d) are no mere technical requirements.

The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard,* 414 U.S. 473, 476 (1974). The rule embodies the elementary due process requirement of notice, and the drafting standard established by Rule 65(d) is that an ordinary person reading the court's order should be able to ascertain exactly what conduct is proscribed. *Id*. ("Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.").

Here, the Stay Order lists out the specific actions that are stayed: "… subjecting noncitizens to visa denial or revocation, exclusion, or removal …" Stay Order ¶ 3. Vetting is not mentioned, and neither is the December Cable or May Policy. Further, while in the accompanying memorandum the Court found the December Cable likely expanded the May Policy's scope, ECF No. 54 ("Opinion") at 7, the Court did not analyze whether the vetting of applicants alone was improper. Nowhere in the opinion does the Court even discuss State's ability to investigate or vet applicants for involvement in censorship, and nowhere did the Court analyze whether or how Plaintiff would be harmed by vetting alone. The Court only focused on the basis for visa revocation and deportability determinations. *Id.* at 50. Moreover, the Court did "not hold that Defendants are powerless when a foreign official wields sovereign authority to suppress protected expression in the United States," *Id.* at 47, and did not stay the May Policy. Instead, the Court's Stay Order is targeted at curtailing its concern about an expanding scope of the May Policy. *Id.* at 54 (noting a stay "would prevent only the application of the challenged policy in a manner likely to violate the First Amendment"). Since the Stay Order focuses exclusively on final visa determinations, and did

not even stay the entire May Policy, vetting of visa applicants for censorship of protected expression in the United States is not plainly covered.

Plaintiff tries to improperly shift the focus of the Stay Order to what it challenged in its preliminary injunction motion. ECF No. 56 ("Motion to Clarify") ¶ 3. This fails for several reasons. First, the Court only granted Plaintiff's preliminary motion in part and denied the remainder. Stay Order ¶ 2. Second, the Court clearly outlines the covered conduct in the stay order and does not include vetting. *Id.* ¶ 3. And third, to the extent the Court held that the December Cable "applies the policy's criteria to every covered visa applicant whose work history touches the enumerated fields", this was based off an NPR articles summary of the December Cable, and not the December Cable itself, which is now before the Court. Opinion at 46.

The December Cable does not instruct consular officers to apply the May Policy's criteria to everyone involved in content moderation work. *Compare* ECF No. 57-1 ("Cable") ¶¶ 7-9 *with* Opinion at 37-38. And it does not authorize consular officers to make "ineligibility findings." Motion To Clarify ¶ 5. The Cable only instructs consular officers that content moderation work *might* fall under the May Policy, Cable ¶ 8, and, if consular officers identify any such activity, to vet applicants' work histories to "uncover evidence an applicant was responsible for, or complicit in, censorship or attempted censorship of protected expression in the United States," *id.* ¶ 9. Activities that might be considered "censorship or attempted censorship of protected expression" are further defined in paragraph 7, which lists various conduct related to complying with government censorship regimes. *Id.* ¶ 7. Holding certain viewpoints on content moderation are not mentioned. But most importantly, the December Cable only authorizes consular officers to vet applicants and refer potential cases to the Secretary for further review. This is made clear in paragraph 9 of the December Cable, which refers consular officers to another referendum that

explains the process for pursuing an ineligibility finding by referring for further review and possibly ultimately a finding by the Secretary. Referendum B ¶¶ 24-25, made available at https://kfai-documents.s3.amazonaws.com/documents/1187d31c22/Exhibits-237-241.pdf#page=11 (last visited August 18, 2026).[1] Thus, the December Cable does not even do what the NPR Article and Plaintiff have described.

State is ensuring compliance with the Stay Order by reviewing referrals and ensuring visa applicants are not denied "based on research, reporting, advocacy, or other work involving misinformation, disinformation, fact checking, content moderation, compliance, or trust and safety." Stay Order ¶ 3. However, the Stay Order does not stay vetting, and the Court's Opinion did not analyze vetting. The Court should thus deny Plaintiff's Motion to Clarify.

Dated: August 31, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Zachariah Weston Lindsey*
Zachariah (Zack) Weston Lindsey
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
202-252-6612

*Attorneys for the United States of America*

[1] This document has already been made publicly available in a related litigation and was identified to Plaintiff when State shared the December Cable.