**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

COALITION FOR INDEPENDENT TECHNOLOGY RESEARCH,

Plaintiff,

v.

MARCO RUBIO, in his official capacity as Secretary of State; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; and TODD BLANCHE, in his official capacity as Attorney General of the United States,

Defendants.

Civil Action No. 1:26-cv-00815 (JEB)

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO CLARIFY STAY ORDER**

Plaintiff Coalition for Independent Technology Research ("CITR") submits this reply in support of its motion to clarify the Court's July 14, 2026 order granting in part CITR's Motion for Section 705 Stay and Preliminary Injunction, ECF No. 53 ("Order"). Defendants oppose CITR's motion to clarify, arguing that it seeks a substantial expansion of the Order through inclusion of the December 2025 State Department cable to consular officers (the "Cable"). *See* ECF No. 58 ("Defs.' Opp."). It does not. It seeks simply to reaffirm that the Order stayed the challenged policy (the "Policy"), as conveyed in the Order itself and the accompanying memorandum opinion. *See* ECF No. 54 ("Mem. Op.").

1. At the outset, Defendants mistakenly assert that the Court entered a preliminary injunction and thus confuse the relevant standard. *See* Defs.' Opp. 1–2. The Court issued a stay pursuant to 5 U.S.C. § 705, not a preliminary injunction, and Federal Rule of Civil Procedure 65(d) governs injunctive orders, not § 705 stays. As this Court and others have recognized, a

§ 705 stay is not a preliminary injunction*, see Make the Rd. N.Y. v. Mullin*, 179 F.4th 16, 31–32 (D.C. Cir. 2026); Mem. Op. 32, so Rule 65(d) does not apply here. Rather, a § 705 stay functions as a "preliminary form of vacatur." *Make the Rd. N.Y.*, 179 F.4th at 32. It "temporarily suspend[s] the operative force of the challenged action." *Id.* at 33.

2. Here, the operative force of the stayed Policy stems in part from the Cable. Indeed, the Court described the Cable as one of the Policy's "operative instruments" in carefully concluding that it was part of the Policy. Mem. Op. 43; *see id.* at 12–16, 37–38, 46, 49–50; *id.* at 58 ("stay[ing] the challenged policy"); *see also* Order 1 (staying "Defendants' policy"). Defendants ignore the Court's detailed analysis of the scope of the Policy in insisting that the Order "focuses exclusively on final visa determinations," excluding the vetting that precedes those determinations. Defs.' Opp. 2. As the Court correctly concluded, however, CITR challenged "the policy-level criteria the Department has directed its officers to apply, not the outcome of any one decision." Mem. Op. at 50. Defendants further ignore the Court's conclusion that CITR is likely to prevail on its facial challenge to the Policy, *see* Mem. Op. 47–48,[1] in asserting that the Court "did not even stay the entire May policy." Defs.' Opp. 2–3. To the contrary, the Court "stay[ed] the challenged policy," Mem. Op. 58, after recognizing that CITR "challenges the Government's policy *in toto*, and the relief it seeks runs to the policy itself," *id.* at 31.

3. Defendants inappropriately attempt to relitigate the scope of the Policy with reference to the redacted Cable submitted under seal. In their response to CITR's Motion for Section 705 Stay and Preliminary Injunction, Defendants refused to acknowledge the existence of the Cable. *See generally* ECF No. 45. Yet they did not dispute NPR's reporting on the contents

[1] Similarly, a district court in the Northern District of California recently issued a declaratory judgment that Defendants' use of the foreign policy provisions at issue in this case, 8 U.S.C. §§ 1182(a)(3)(C), 1227(a)(4)(C), "violate the First and Fifth Amendments as applied to enforcement based on protected speech." *Stanford Daily Publ'g Corp. v. Rubio*, No. 25-CV-06618-NW, 2026 WL 2549090, at *2 (N.D. Cal. Aug. 28, 2026).

of the Cable during the hearing on that Motion. *See* ECF No. 50, at 21–23. Nor do they now meaningfully dispute the Court's understanding of the Cable based on NPR's reporting. In any event, the Court may now review a redacted version of the Cable itself to determine whether its previous understanding still holds. *See* Defs.' Opp. 3 (referencing ¶¶ 7–9 of the Cable); *see also* Min. Order, Aug. 17, 2026 (granting motion to file redacted copy of Cable under seal). It does.

4. The Court's opinion and Order foreclose Defendants' argument that they may continue to require consular officers to comply with the Cable's viewpoint-discriminatory, Policy-specific vetting and reporting directives—including the directive that consular officers pursue findings of ineligibility under the Policy—so long as Defendants do not actually deny visas, or exclude or deport individuals, under the Policy. Defendants' newly supplied detail about the "process for pursuing an ineligibility finding," Defs.' Opp. 4, only underscores this point. As explained in documents produced in related litigation, *see* Defs.' Opp. 4 & n.1, to pursue a finding of ineligibility under 8 U.S.C. § 1182(a)(3)(C), consular officers must request a security advisory opinion ("SAO") from State Department headquarters in Washington, D.C., which only the Secretary of State may then act upon. Ex. 239 at 18, *Am. Ass'n. of Univ. Professors v. Rubio*, 802 F. Supp. 3d 120 (D. Mass. 2025) (No. 1:25-cv-10685), ECF No. 315-16. The part of the Foreign Affairs Manual detailing the SAO process is unavailable to the public. *See* Volume 9 Foreign Affairs Manual §§ 302.14-2, 304.2. Based on the position Defendants have taken here, though, consular officers must continue to request, and State Department officials must continue to create, SAOs on visa applicants whom they deem subject to exclusion under the Policy. Defendants' only assurance is that Secretary Rubio is not taking the final step to make inadmissibility determinations based on those SAOs. But that bare assurance does not cure the chilling effect of the Policy's vetting and reporting directives on the speech and association of CITR's members,

and the resulting harms to CITR. As the Court found, the Cable is a "standing, programmatic directive" that mandates scrutiny of a wide range of expressive and associational activity, Mem. Op. at 46, and that scrutiny, combined with the threat of enforcement, unconstitutionally impairs CITR's expressive and associational rights, *id.* at 46–47; *see also id.* at 53 (addressing both the Cable and the December enforcement actions in concluding that "[t]he resulting chill . . . deepens each day the policy remains in force"). The Cable's Policy-specific vetting and reporting requirements remain a burden on the expressive and associational rights of visa applicants who engage in research, reporting, advocacy, or other work involving misinformation, disinformation, fact checking, content moderation, compliance, or trust and safety—a burden that would not exist but for the Policy that the Court has stayed.

5. Accordingly, CITR respectfully requests that this Court issue CITR's proposed order (a) clarifying that the third paragraph of the Order staying "Defendants' policy" applies to the three paragraphs of the Cable that are part of the Policy, (b) ordering Defendants to immediately inform consular officers that those paragraphs of the Cable are stayed and not currently in effect, and (c) directing Defendants' counsel to file a status report within seven days of the Court's ruling on this motion certifying compliance with the requested order. *See* ECF No. 56-1.

September 8, 2026

Respectfully submitted,

/s/ *Nicole Schneidman*
Nicole Schneidman*
Protect Democracy Project
2020 Pennsylvania Avenue NW, Suite 163
Washington, DC 20006
(202) 579-4582
nicole.schneidman@protectdemocracy.org

/s/ *Carrie DeCell*
Carrie DeCell (D.C. Bar No. 1015491)
Anna Diakun*
Katie Fallow* (D.C. Bar No. 462002)
Alex Abdo*
Jameel Jaffer (D.D.C. Bar No. MI0067)
Knight First Amendment Institute
at Columbia University

475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
carrie.decell@knightcolumbia.org

*Counsel for Plaintiff*

* Admitted *pro hac vice*.