Case No. 1:26-cv-815 (JEB)

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

COALITION FOR INDEPENDENT TECHNOLOGY RESEARCH,

Plaintiff,

v.

MARCO RUBIO, in his official capacity as Secretary of State; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; and TODD BLANCHE, in his official capacity as Attorney General of the United States,

Defendants.

Civil Action No. 1:26-cv-00815 (JEB)

**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO CLARIFY STAY ORDER**

Plaintiff Coalition for Independent Technology Research ("CITR") submits this supplemental brief in support of its motion to clarify the Court's July 14, 2026 order staying Defendants' "policy of subjecting noncitizens to visa denial or revocation, exclusion, or removal based on research, reporting, advocacy, or other work involving misinformation, disinformation, fact checking, content moderation, compliance, or trust and safety" (the "Policy"). ECF No. 53 (the "Order"); *see* ECF No. 56 (Motion to Clarify). Specifically, this supplemental brief explains why the Order applies to Paragraph 8 of the December 2, 2025 cable to consular officers (the "Cable"), which was filed with the Court under seal.[1] *See* Min. Order, Oct. 1, 2026; ECF No. 62. As explained in more detail below, the Order stayed the Policy pursuant to 5 U.S.C. § 705, thereby suspending the Policy's operative force, and Paragraph 8 is a core component of the Policy's

[1] The parties have agreed that CITR will provisionally file this brief under seal, and that Defendants will then consider whether to agree to lift the seal. If Defendants do not agree to lift the seal, then CITR will file a redacted version of this brief on the public docket.

operative force. Moreover, Paragraph 8 shares—and indeed exemplifies—the Policy's constitutional defect, which led the Court to conclude that a stay was warranted. Paragraph 8 should therefore be suspended along with the rest of the Policy pending the remainder of this litigation.

*First*, Paragraph 8 is a core component of the Policy's "operative force" and must therefore be suspended under the Order. A § 705 stay is a preliminary form of vacatur, and it "operates on the legal status of the challenged agency action by temporarily suspending its operative force." Mem. Op. 32 (quoting *Make the Rd. N.Y. v. Mullin*, 179 F.4th 16, 31 (D.C. Cir. 2026)), ECF No. 54. Paragraph 8 is part of the Policy's "operative force" because it imposes new obligations on consular officers in direct service of the Policy. Paragraph 8 is prescriptive, not descriptive: it states that consular officers "*must* thoroughly explore" applicants' employment histories "to ensure no participation" in activities considered to involve the "suppression of protected expression," and it provides a non-exhaustive list of possible examples of those activities. ECF No. 62, ¶ 8. To be sure, consular officers possess broad discretion to review visa applicants' employment histories and any other information that officers deem necessary to adjudicate visa applications—discretion they could still exercise on a case-by-case basis even if Paragraph 8 were suspended along with the rest of the Policy. *See, e.g.*, 2 C.F.R. §§ 41.103(b)(2), 42.63(c). But Paragraph 8 imposes new obligations on consular officers, leaving them without discretion to conduct the Policy-specific review that Paragraph 8 prescribes (as Defendants admit, *see* ECF No. 58, at 3). *Cf. Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, No. 26-5006, 2026 WL 2635380, at *9 (D.C. Cir. Sept. 8, 2026) ("An agency action carries 'direct and appreciable legal consequences' sufficient to render it final when it imposes new restrictions or obligations on government officials." (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997))).

That Paragraph 8 is a core component of the Policy is confirmed by the Court's memorandum opinion accompanying the Order. In concluding that the Policy included the Cable, the Court emphasized provisions of the Cable that we now know to be contained in Paragraph 8. *See, e.g.*, Mem. Op. 7 (explaining how "consular officers were instructed to 'thoroughly explore' applicants' 'work histories,' 'resumes, LinkedIn profiles,' and media appearances for involvement in" certain activities); *see also id.* at 14, 37, 46. And the Court described the Cable as one of the Policy's "operative instruments." *Id.* at 43. Accordingly, Paragraph 8 is a core component of the Policy's "operative force" and thus subject to the Order staying the Policy.

*Second*, Paragraph 8 shares—and indeed exemplifies—the Policy's primary constitutional defect, which led the Court to conclude that CITR was likely to succeed on the merits of its challenge and was therefore entitled to a stay. *See* Mem. Op. 34 ("CITR is likely to show that the policy, as expanded in December and applied since, sweeps into the category of 'foreign censorship' a substantial measure of the research, reporting, advocacy, and association through which CITR and institutions like it carry out their protected work."). The Court explained that the Policy's "unconstitutional applications are those in which Defendants treat a noncitizen's research, reporting, advocacy, or platform-governance work favoring greater content moderation as the basis for visa denial, exclusion, or removal." *Id.* at 40. Those are the exact applications of the Policy described in Paragraph 8. As the Court explained, citing an NPR article describing the Cable and Paragraph 8 in particular: "The December Cable is not confined to foreign officials, sovereign compulsion, or cooperation with a foreign-censorship regime. It directs scrutiny toward work in the platform-governance field—including efforts to combat false narratives, fact checking, moderation, compliance, and trust-and-safety functions." *Id.* at 46. "Nor is the Cable a solitary application," the Court continued. *Id.* "It is a standing, programmatic directive that applies the

policy's criteria to every covered visa applicant whose work history touches the enumerated fields." *Id.*

Ultimately, the Court concluded that the Policy's viewpoint-discrimination "defect" lies in "the policy's selection criteria itself, and it travels wherever the policy does—into *visa screening*, exclusion, and removal alike." Mem. Op. 47 (emphasis added). It is Paragraph 8 that requires consular officers to conduct that visa screening based on the viewpoint-discriminatory selection criteria it sets forth. Visa screening based on those selection criteria, combined with the threat of enforcement, unconstitutionally impairs CITR's expressive and associational rights. *See id.* at 46–47. And "[t]he resulting chill . . . deepens each day the policy remains in force." *Id.* at 53. The Court therefore stayed the Policy, which the Order itself defines by reference to the selection criteria set forth in Paragraph 8. *See* ECF No. 53 (staying Defendants' "policy of subjecting noncitizens to visa denial or revocation, exclusion, or removal based on research, reporting, advocacy, or other work involving misinformation, disinformation, fact checking, content moderation, compliance, or trust and safety").

In sum, the Court correctly ascertained that CITR challenged "the policy-level criteria the Department has directed its officers to apply, not the outcome of any one decision," Mem. Op. 50, and it sought relief against the Policy "*in toto*," *id.* at 31. The Court granted that relief in the Order staying the Policy. *See id.* at 58 ("stay[ing] the challenged policy pending resolution of this action"); *see also id.* at 32 (explaining that, while stayed, "the policy will not operate while this case proceeds"). The Order thus applies to the Policy in full, at least with respect to its operative instruments, which include Paragraph 8 of the Cable. Accordingly, CITR respectfully requests that this Court clarify that the third paragraph of the Order staying the Policy applies to Paragraph 8 of the Cable.

October 8, 2026

Respectfully submitted,

/s/ *Nicole Schneidman*
Nicole Schneidman*
Protect Democracy Project
2020 Pennsylvania Avenue NW, Suite 163
Washington, DC 20006
(202) 579-4582
nicole.schneidman@protectdemocracy.org

/s/ *Carrie DeCell*
Carrie DeCell (D.C. Bar No. 1015491)
Zoe Rubin*
Anna Diakun*
Katie Fallow* (D.C. Bar No. 462002)
Alex Abdo*
Jameel Jaffer (D.D.C. Bar No. MI0067)
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
carrie.decell@knightcolumbia.org

*Counsel for Plaintiff*

* Admitted *pro hac vice*.