**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| COALITION FOR INDEPENDENT TECHNOLOGY RESEARCH,<br><br>Plaintiff,<br><br>v.<br><br>MARCO RUBIO, in his official capacity as Secretary of State; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; and TODD BLANCHE, in his official capacity as Attorney General of the United States,<br><br>Defendants. | Civil Action No. 1:26-cv-00815 (JEB) |

**PLAINTIFF'S SUPPLEMENTAL REPLY IN SUPPORT OF MOTION TO CLARIFY STAY ORDER**

The Court's July 14, 2026 order means what it says: "Defendants' *policy* of subjecting noncitizens to visa denial or revocation, exclusion, or removal based on research, reporting, advocacy, or other work involving misinformation, disinformation, fact checking, content moderation, compliance, or trust and safety is STAYED pursuant to 5 U.S.C. § 705 pending resolution of this action." ECF No. 53 (the "Order") (emphasis added). The Court should reject Defendants' attempts to excise the word "policy" from the Order and to tailor it to fit the arguments they made—and lost—on the underlying motion. The Court ruled that the policy challenged in this case (the "Policy") included a December 2, 2025 cable to consular officers (the "Cable"). The Court further ruled that Plaintiff, the Coalition for Independent Technology Research ("CITR"), was likely to prevail on its facial challenge to the Policy under the First Amendment. The Court therefore stayed the Policy, suspending its operative force. Because Paragraph 8 of the Cable is

part of the Policy's operative force, that paragraph, too, must be suspended pending resolution of this litigation.

First, the Court rightly rejected Defendants' argument that the Policy excluded the Cable. *See* Mem. Op. 12–16, 37–39, ECF No. 54. As CITR has highlighted throughout its briefing on the present motion, the Court carefully concluded that the Policy *included* the Cable, and the Court specifically referred in its memorandum opinion to the visa screening criteria set forth in Paragraph 8. *See, e.g.*, Mem. Op. 7, 14, 37, 46; *see also* Mot. to Clarify 2, 4, ECF No. 56; Reply in Supp. of Mot. to Clarify 2, ECF No. 61; Suppl. Br. in Supp. of Mot. to Clarify 3–4, ECF No. 69. And, as CITR has explained, Paragraph 8 is a core component of the Policy's operative force because it compels consular officers to conduct Policy-specific visa screening using criteria that relate almost exclusively to First Amendment–protected activity. *See* Suppl. Br. 2–3. *Contra* Defs.' Resp. to Suppl. Br. in Supp. of Mot. to Clarify 2, ECF No. 70 ("Defs.' Suppl. Resp.") (claiming that "Paragraph 8 merely authorizes vetting of an applicant's job history").

Second, the Court correctly concluded that CITR was likely to prevail on its facial challenge to the Policy under the First Amendment. As the Court recognized, CITR carried a heavy burden to demonstrate that the Policy's unconstitutional applications substantially outweighed any constitutional applications. *See* Mem. Op. 36; *see also Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). The Court ultimately concluded that CITR had carried its burden: "Whatever arithmetic might refine the comparison, the overbreadth inquiry asks whether a measure 'prohibits a substantial amount of protected speech relative to its plainly legitimate sweep,' and a policy that selects its targets by an unconstitutional criteria, while its lawful uses remain occasional and largely unproven, answers that question." Mem. Op. 47 (quoting *United States v. Hansen*, 599 U.S. 762, 770 (2023)). Consequently, the Policy may be "struck down in its entirety," *Moody*, 603

U.S. at 723, to "provide[] breathing room for free expression." Mem. Op. at 37 (quoting *Hansen*, 599 U.S. at 769).

Finally, having ruled that the Policy was likely to fail CITR's facial challenge, the Court stayed the Policy without any caveats. As CITR has previously explained, a § 705 stay functions as a "preliminary form of . . . vacatur," Mem. Op. 56, which "operates on the legal status of the challenged agency action by temporarily suspending its operative force." *Id*. at 32 (citing *Make the Rd. N.Y. v. Mullin*, 179 F.4th 16, 31 (D.C. Cir. 2026)). The doctrine of vacatur reflects the fact that "[c]ourts ordinarily do not attempt, even with the assistance of agency counsel, to fashion a valid regulation from the remnants of the old rule." *Harmon v. Thornburgh*, 878 F.2d 484, 494 (D.C. Cir. 1989). Therefore, "[w]hen a court finds that an agency regulation is invalid in substantial part, and that the invalid portion cannot be severed from the rest of the rule, its typical response is to vacate the rule and remand to the agency." *Id.* Defendants did not request that the Court sever any unconstitutional components of the Policy in ordering relief, and the Court's opinion and Order contain no carve-outs for visa screening. Thus, especially given the Court's ruling that the Policy is likely to fail a facial challenge under the First Amendment, the Order must be understood to stay the Policy in full, thereby suspending all components of the Policy's operative force—including Paragraph 8 of the Cable. *See* Suppl. Br. 2–3.

For these reasons, Defendants are incorrect to insist that the Order prevents only certain "application[s]" of the Policy. *See* Defs.' Suppl. Resp. 1–2 (suggesting that vetting could "uncover conduct that the Court held the Department could still consider in denying a visa," such as evidence "that a visa applicant served as a foreign official that 'wield[ed] sovereign authority to suppress protected expression in the United States'" (quoting Mem. Op. 47)); *see also* Defs.' Resp. to Mot. to Clarify 2–3, ECF No. 58 (arguing that the Court "did not stay the May Policy" and instead

"targeted" its stay at "its concern about an expanding scope of the May Policy").[1] In doing so, Defendants misconstrue the overbreadth doctrine, which was the basis for the Court's ruling on the Policy. *See* Mem. Op. 36–37, 47; *see also Moody*, 603 U.S. at 723 (explaining that, in the First Amendment context, "even a law with 'a plainly legitimate sweep' may be struck down in its entirety"); *Hansen*, 599 U.S. at 769 (same). And they also misconstrue the § 705 relief that the Court ordered in this case. *See* Mem. Op. 58 ("The Court will therefore grant [CITR's] Motion to the extent it seeks a stay under 5 U.S.C. § 705 and will stay the challenged policy pending resolution of this action."); *see also Make the Rd. N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313, at *35 (D.C. Cir. Nov. 22, 2025) (statement of Millett and Childs, JJ.) ("Section 705 stays operate on the legal source of authority for an agency to act at all. They generally do not simply insulate certain parties from enforcement measures.").

The Court expressly understood that CITR sought relief against the Policy "*in toto*," Mem. Op. 31, including "the policy-level criteria the Department has directed its officers to apply," *id.* at 50—which is the directive set forth in Paragraph 8 of the Cable. And the Court granted CITR's requested relief in staying the Policy. *See id.* at 32, 58. Defendants did not seek reconsideration of the opinion or Order, and they cannot relitigate their losses on a motion to clarify. Therefore, CITR

[1] The State Department has made a similar pronouncement to the public. Earlier this month, a State Department spokesperson stated that, "[o]n December 23, 2025, the Secretary imposed visa restrictions that generally bar five individuals from entering the United States," and "[t]he Department does not preview potential actions, but the policy announced on May 28, 2025, *is global and enforceable wherever the facts warrant*." Michael Shellenberger, *Europe, Seeking To Censor Americans, Has Labeled the USA "Foreign Information" Threat*, Public (Oct. 8, 2026), https://perma.cc/3GCS-ZS79 (emphasis added). This statement came in the context of reporting that the State Department had pressured foreign governments to withdraw support for an international conference on disinformation, in part because of a panel titled "Under attack: How the counter-disinformation community is dealing with US government pressure," which featured a CITR staff member discussing this very case. *See* Eliza Gkritsi, Nahal Toosi & Jack Detsch, *EU, Canada and Lithuania Pull Out of Disinformation Conference After US Pressure*, Politico (Oct. 7, 2026), https://perma.cc/ANE4-XMCP.

respectfully requests that this Court confirm that the third paragraph of the Order staying the Policy applies to Paragraph 8 of the Cable.

October 20, 2026

Respectfully submitted,

/s/ *Nicole Schneidman*
Nicole Schneidman*
Protect Democracy Project
2020 Pennsylvania Avenue NW, Suite 163
Washington, DC 20006
(202) 579-4582
nicole.schneidman@protectdemocracy.org

/s/ *Carrie DeCell*
Carrie DeCell (D.C. Bar No. 1015491)
Zoe Rubin*
Anna Diakun*
Katie Fallow* (D.C. Bar No. 462002)
Alex Abdo*
Jameel Jaffer (D.D.C. Bar No. MI0067)
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
carrie.decell@knightcolumbia.org

*Counsel for Plaintiff*

* Admitted *pro hac vice*.